**Joan Adkins FARRAR, Petitioner,**

v.

**James T. FARRAR, Respondent.**

Supreme Court of Tennessee.

July 25, 1977.

J. Travis Price, Springfield, Frank J. Runyon, Runyon & Runyon, Clarksville, for petitioner.

Collier Goodlett, Jr., Goodlett, Peay & Hurt, Clarksville, for respondent.

HENRY, Justice.

This divorce action raises two questions: (1) the sufficiency of the evidence to support the decree and (2) whether proof of adultery may form the basis of a divorce grounded on a charge of cruel and inhuman treatment. The trial judge dismissed the husband's complaint and awarded the petitioner (wife) a divorce, under her counterclaim, on the grounds of cruel and inhuman treatment. The Court of Appeals reversed, holding that the award of divorce was not justified by the pleadings and the proof. We granted certiorari to examine the correctness of this holding.

I.

Dr. James T. Farrar filed his complaint seeking an absolute divorce on the grounds of cruel and inhuman treatment. His wife filed her answer and counterclaim (designated as a cross-complaint), generally denying the allegations of the complaint and seeking a divorce from bed and board upon the grounds of cruel and inhuman treatment.

On motion for a more specific statement, Joan Farrar amended her counterclaim on January 9, 1975. In this amendment she alleged *inter alia* that Dr. Farrar "has been keeping open and notorious company" with another woman. Dr. Farrar moved under Rule 12.05, Tenn.R. of Civ.P., for a more definite statement. Pursuant to this motion, and the order of the trial judge, on February 27, 1975, she filed a second amendment to her counterclaim. In this

pleading she named the woman, Judy Johnson, and alleged that Dr. Farrar had taken trips with her, "even going to places outside the State"; that this relationship was "much closer than society accepts"; that he has been a frequent visitor at her residence; that they have eaten evening meals together on a number of occasions; and that they "have stayed in motel rooms for many hours at a time during late night hours, if not in fact all night."

These pleadings contain no specific charges of adultery, but merely allege this open and continuous association with Judy Johnson as one of the details of her charge of cruel and inhuman treatment. Still another motion was made for a more definite statement and on April 4, 1975, Joan Farrar filed her third amendment specifying trips by Dr. Farrar and Judy Johnson to San Francisco and Canada, an evening meal at the Hearth Restaurant in Nashville, a tryst at the Downtowner in Nashville, and a trip to St. Louis. No answer was filed to this amendment.

## II.

■ We precede our very limited discussion of the proof by recognizing the correct standard of review. Divorce actions are reviewable under Sec. 27–303, T.C.A., which means that they are accompanied by a presumption of the correctness of the action of the trier of fact unless the evidence preponderates against the same. *Greene v. Greene*, 43 Tenn.App. 411, 309 S.W.2d 403 (1957). Every intendment is in favor of the correctness of the decree of the trial court. *Chappell v. Chappell*, 37 Tenn.App. 242, 261 S.W.2d 824 (1952).

The testimony of Joan Farrar and that of her witnesses does not fully support the charges contained in her pleadings. The testimony of Dr. Farrar is quite another story.

He fully confirms Joan Farrar's testimony that on November 5, 1973, upon returning from a trip to Atlanta, he advised her that he wanted out; that the marriage was over; and that he wanted a divorce. He asked her to bring suit. Mrs. Farrar's testimony corroborated the Doctor. She testified to her disbelief and shock when he advised her that he wanted a divorce and to her dismay at his advice, which, in her own words, was as follows:

He told me if I would give him his freedom to take everything he had, just free him, and go out and find myself a man and move to Nashville and get my job back; that he didn't need me any more, and it was a good feeling.

Dr. Farrar admitted to the specifics of a continuing affair with Judy Johnson. He admitted to having spent one or more nights with her in Nashville, sleeping in the same bed; to having been to the Downtowner Motel with her; and to having stayed in her room at night for four or five hours at a time.

He admitted that he took Judy with him to Banff Springs, British Columbia, in the Canadian Rockies, to attend a sexual hypnosis seminar. Dr. Farrar is a radiologist. His interest in sexual hypnosis is not explained in the record. At any rate, he and Judy registered together and stayed in the same room. En route they shared a hotel room in San Francisco. On another occasion she accompanied him to St. Louis, where he registered at the Chase Park Plaza and she "was in and out."

Notwithstanding having spent numerous nights with Judy in several states and Canada, the Doctor denies that they ever had sexual relations. Dr. Farrar was born on Washington's birthday in 1936. He was thirty-nine or forty years of age at the time of these escapades. The trial judge obviously was not impressed with his innocence abroad or at home, and his testimony, no doubt, placed a severe strain upon his patience and forbearance.

The record is somewhat meager as to other extra-marital affairs; but it does show, by the Doctor's testimony, that he had not spent the night with anyone else, "other than a pick-up at the bar or something like that"; but, he says, this happened "rarely." He admits to being registered at a Ramada Inn with another woman but does not know her name.

■ Cruel and inhuman treatment has been defined in various ways and in numerous cases. Further definition is unnecessary. Suffice it to say we cannot conceive of any stronger case of cruel and inhuman treatment than a persistent pattern of adulterous conduct. Nor may it be excused on the basis of a spouse not having contemporaneous knowledge of its occurrence. The hurt, the humiliation, the shame, the wounded pride, the rejection are the same whether the knowledge comes before, during or after the fact. Adultery is rarely perpetrated openly and in the daylight. By its very nature its commission is normally not discovered until the act has been consummated. No man, set upon a pattern of adulterous conduct, willingly furnishes proof of his own turpitude.

We hold that there was ample evidence of cruel and inhuman treatment in this case. We further hold that proof of adultery is admissible in a divorce action charging cruel and inhuman treatment and may form the basis for a decree resting upon cruel and inhuman treatment.

■ Indeed, we note an emerging trend to de-scandalize divorce proceedings. The whole purpose of the legislature in enacting recent amendments to Sec. 36–805, T.C.A.,[1] was to avoid the insertion of scurrilous matter in divorce bills, with the result that the section now requires that the original pleading "shall set forth the grounds for the divorce in substantially the language of the statute," etc., with the right reserved to the defendant to demand a bill of particulars. See also Rule 12.05, Tenn.R.Civ.P.

A further indication of this trend is Chapter 107 of the Public Acts of 1977, adding irreconcilable difference as a ground of divorce.

We find nothing in reason, logic or precedent which would, or should, preclude a trial judge from granting a divorce on the grounds of cruel and inhuman treatment when the evidence establishes adultery, so long as the parties are fully apprised in advance of the nature of the proof. Indeed,

a decent regard for posterity suggests that divorces, except as a last resort, should not be bottomed on adultery.

■ We expressly recognize the rule that normally the uncorroborated admissions or confessions of a guilty party will not support a divorce decree. See *Baber v. Baber*, 205 Tenn. 681, 330 S.W.2d 307 (1959). Public policy demands that this be the general rule; and we declare it to be, except where collusion or coercion are clearly negated. There is not the slightest suggestion of collusion or coercion in this case.

■ We point out that a secondary purpose of the requirement of statutory specificity in divorce actions is to alert the defending spouse to the nature of the charge in order that proper defense may be made. Here, by virtue of motions for a more specific pleading, three amendments to the counterclaim were filed. While adultery was not alleged *in haec verba*, a clear charge of adultery was made. Moreover, this was the major issue tried by the parties. Under these circumstances Rule 15.02, Tenn.R.Civ.P., comes into play and we may treat this issue as being "tried by express or implied consent of the parties . . . as if they had been raised in the pleadings." It is arguable that counterclaimant should have moved to amend her countercomplaint to conform the pleading to the proof. While this would have been better practice, the failure to do so does not preclude this Court from deciding the issue the parties tried in the Court below.

We agree with Judge Drowota's dissent: Although it may be said that the majority opinion is technically correct, I do not feel that it can be said that substantial justice has been accomplished by denying the parties a divorce. No useful purpose can be served by dismissing this case and requiring the appellee to institute a new suit, alleging adultery and desertion and relitigating the issues anew.

We point out that no children were born of this marriage. We fully recognize that considerations of public policy demand that

1. See Ch. 46, Acts of 1957; Ch. 50, Acts of 1971.

the institution of marriage be sheltered and safeguarded. But there is an obverse side to the coin of public policy and consideration must be given to the fact that society is ill-served by a legally commanded continuance of a marriage which exists in name only. We quote from the opinion of the late Chief Justice Grafton Green, in *Lingner v. Lingner*, 165 Tenn. 525, 534, 56 S.W.2d 749, 752 (1933):

> As pointed out by another court, we must take into consideration "the mischiefs arising from turning out into the world, in enforced celibacy, persons who are *neither married nor unmarried*." (Citation omitted.) Society is not interested in perpetuating *a status out of which no good can come and from which harm may result.*

(Emphasis supplied.)

We affirm the action of the trial court in awarding an absolute divorce under the counterclaim.

### III.

Dr. Farrar assigned as error in the Court of Appeals the trial court's decree 24 May, 1976, ordering him to pay to his wife's attorneys a fee of $5,000.00 for their representation on the appeal to the Court of Appeals, in addition to the fees previously ordered.

The technical record in this cause was filed in the Court of Appeals on May 18, 1976. The Court of Appeals held that this order was not a part of the record. In connection with this holding it noted from the photostatic copy of the order of May 18, 1976, that it was filed in the trial court on June 1, 1976, certified by the clerk on June 1, 1976, and filed with the Court of Appeals on June 2, 1976. Under these circumstances the Court of Appeals held that there was no appeal from this order and "the assignment of error in reference thereto cannot be considered and is overruled."

Dr. Farrar has filed in this Court a petition for the writ of certiorari aimed solely at this portion of the holding of the Court of Appeals.

The record shows that on 24 May, 1976, six days after the technical record was filed in the Court of Appeals, Judge Thomas A. Shriver, on motion, remanded the case to the trial court "to set an award of alimony pending the appeal and to award an amount for the appellee's attorney regarding said appeal. . . ."

It was in response to this order on remand that the May 24, 1976, (signed May 26, 1976, and entered June 1, 1976), order was entered and certified to the Court of Appeals. Under these circumstances this order was properly before the Court, notwithstanding the fact that no appeal therefrom was prayed. The sole purpose of the remand was for the fixing of attorneys' fees. Certainly the amount so fixed, and certified, is a legitimate issue on appeal.

We remand this case to the Court of Appeals for consideration of respondent's assignment number 9 in that Court. On remand consideration will also be given to assignments 3, 6, 7 and 8, in the Court of Appeals, relating to attorneys' fees, property division and alimony, all of which were pretermitted by the opinion of that Court.

Pending the further action of the Court of Appeals, all orders and decrees of the trial court will remain in effect, including restraining and support orders. Any arrearage in the monthly payments decreed by the trial court will be promptly settled and, pending the final outcome of this controversy, said payments will be made in accordance with the prior orders of the trial court.

Nothing in this opinion shall be construed to preclude an award to petitioner's counsel of attorney's fees for service rendered on this appeal to this Court and in connection with the proceedings on remand.

Reversed and remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.