ELLA MAE BROWN,                    )
                                   )
    Plaintiff/Counter-Defendant/   )
    Appellee,                      )
                                   )      Appeal No.
                                   )      01-A-01-9510-CV-00480
                                   )
VS.                                )
                                   )      Davidson Circuit
                                   )      No. 94D-3788
MARVIN DOUGLAS BROWN,              )
                                   )
    Defendant/Counter-Plaintiff/   )
    Appellee.                      )

FILED

October 4, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE


CAROL DOWNTON
4205 Gallatin Road
Nashville, Tennessee 37216
    Attorney for Plaintiff/Counter-Defendant/Appellee

MARVIN DOUGLAS BROWN, #78585
Riverbend Maximum Security Institute
7475 Cockrill Bend Road
Nashville, Tennessee 37209-1010
    Pro Se/Defendant/Counter-Plaintiff/Appellant


REVERSED; VACATED
AND REMANDED


BEN H. CANTRELL, JUDGE


CONCUR:
TODD, P.J., M.S.
KOCH, J.


# O P I N I O N

The wife of a prisoner in the custody of the Tennessee Department of Correction filed for divorce, claiming that her husband was guilty of inappropriate marital conduct. The husband answered and counterclaimed, and moved the court to order the wife to file a Bill of Particulars, setting forth the facts she was relying upon as grounds for the pending divorce. The court did not respond to the husband's motion, nor did it respond to the husband's Motion for Writ of Habeas Corpus ad Testificandum, but granted the wife an absolute divorce without affording the husband the opportunity to present any evidence. We reverse, and vacate the trial court's order.

## I. The Marriage and Divorce

The appellant, Marvin Douglas Brown, was sentenced to serve two consecutive 99 year terms of imprisonment. He has been continuously confined since January 15, 1974. In 1983, Mr. Brown met the woman who would eventually become his wife. Though she lived in East Tennessee, she subsequently moved to Middle Tennessee to be near the prison where he was incarcerated, and she made regular weekly visits to the prison to see him. On May 27, 1989, the parties were married in the chapel at the Tennessee State Prison in Nashville.

Despite the rigors of the husband's confinement, the parties managed to maintain a cooperative relationship. Marvin Brown sent his wife the money he earned in prison to help her pay her bills and to enable her to purchase some items for her use, such as a riding lawn mower and a portable storage shed. Ella Mae Brown visited her husband frequently, bringing him special food each time, supplying him with shoes when he needed them, and contributing funds towards his court costs.

Eventually, problems arose between the parties. The nature of these problems is nowhere stated in the record, though the appellee refers in her brief to "excessive drug abuse" on the part of the husband and his maintaining a relationship by correspondence with another woman. On October 21, 1994, Mrs. Brown filed a Complaint for Absolute Divorce, citing as grounds irreconcilable differences and inappropriate marital conduct. On November 18, 1994, Mr. Brown filed an answer denying that he had been guilty of inappropriate marital conduct. He also counter-claimed for divorce.

Mr. Brown simultaneously filed a Motion for a Bill of Particulars, and a Motion for Appointment of Counsel. The court did not issue a response to either motion, although Mr. Brown filed two subsequent motions before trial for a judicial ruling on his Motion for a Bill of Particulars. On April 3, 1995, Mr. Brown filed a well-reasoned Petition for Writ of Habeas Corpus ad Testificandum. The trial court again failed to respond.

The divorce hearing took place on August 29, 1995. The husband was not present. The court heard testimony from the wife, and from two witnesses whose expected participation was communicated to the husband only a few hours before the trial. A corrections officer had been summoned to provide a transcript of a taped telephone conversation between the husband and wife. The husband insisted that the tape contained admissions that contradicted the wife's sworn answers to the husband's interrogatories. The officer had the tape in his possession, but no transcript was provided, and the tape was not admitted into evidence.

After the hearing, the trial court issued a decree granting the wife an absolute divorce on the ground of inappropriate marital conduct. The decree also divested the husband of any interest he might have had in the house that the wife purchased during the course of the marriage, granted to the wife full ownership of all

personal property currently in her possession, and established a permanent restraining order against the husband, prohibiting him from threatening, coming around, or harrassing the wife in any way. This appeal followed.

## II. The Bill of Particulars

A prisoner does not forfeit his constitutional right of access to the civil courts by virtue of his conviction and incarceration. *Whisnant v. Byrd*, 525 S.W.2d 152, 153 (Tenn. 1975). The due process to which he is entitled however is somewhat diminished in comparison to the rights he could exercise if he were not incarcerated. For example, a prisoner who files a civil complaint unrelated to the legality of his conviction will not normally be allowed to make a personal appearance in court to present his case, absent unusual circumstances, 525 S.W.2d at 154, but he may testify by deposition. Tenn. Code Ann. § 41-21-304.

Due process requires notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed 865 (1950). Though incarceration necessarily limits a prisoner's right to be heard by personal appearance, it does not preclude him from receiving the same notice of actions against him that is afforded to citizens who are not under sentence. We note that the Eastern Section of this court recently vacated a divorce decree granted to the wife of a prisoner, because the defendant did not receive notice of the date of the hearing until four days before it was to take place. The Court found that the limited period of time available to prepare his defense was insufficient to accord him constitutional due process. *Tolbert v. Tolbert*, Appeal No. 03A01-9406-CV-00230 (Filed in Knoxville December 15, 1994).

Our legislature has provided the means whereby a defendant to a divorce action may be notified of the basis of the allegations against him. Tenn. Code Ann. § 36-4-106 reads:

> **Contents of petition for divorce. --** (a) The bill or petition shall set forth the grounds for the divorce in substantially the language of § 36-4-101 or § 36-4-102, and pray only for divorce from the defendant, or for a divorce and such other and further relief to which the complainant may think himself or herself entitled. In cases wherein an answer is filed, the court shall, on motion of the defendant, require the complainant to file a bill of particulars, setting forth the facts relied upon as grounds for the divorce, with reasonable certainty as to time and place.

The intent of the legislature in requiring the wording of the petition to substantially follow the language of the two statutes that set out the grounds upon which divorce may be granted is to prevent the petitioner from inserting scurrilous matters into so public a document. See *Farrar v. Farrar*, 553 S.W.2d 741 (Tenn. 1977). At this early stage in the proceedings, due process does not require detailed notice of the acts that the complainant is alleging the defendant has been guilty of.

However after the defendant has answered the petition, and denied the validity of the grounds recited in it, he is entitled to a Bill of Particulars, so he can know what he is accused of, and defend himself against the petitioner's charges if he wishes.

As the appellee points out, if Mr. Brown cannot make a personal appearance, he can still exercise the right to be heard by submitting a deposition. See Tenn. Code Ann. § 41-21-304(a). But without a Bill of Particulars, he has been deprived of the opportunity to present facts that would negate the allegations that are implied by the complaint against him. It therefore constitutes reversible error for the trial court to have failed to grant Mr. Brown's Motion for a Bill of Particulars.

### III. Habeas Corpus ad Testificandum

The Writ of Habeas Corpus ad Testificandum is a common law writ which is used to enable a prisoner detained in a jail or prison to be brought before the court to give evidence. Blacks Law Dictionary, 4th Ed. (1957). Our Legislature appears to have shut the door on the use of this writ in civil proceedings, by virtue of Tenn. Code Ann. § 41-21-304(a):

> **Depositions**.-- (a) In no civil case can a convict be removed from the penitentiary to give personal attendance at court, but his testimony may be taken by deposition as in other cases, the party seeking his testimony being required to make affidavit that the convict is a material witness in the cause.

Neither party has raised the question on appeal as to whether the statute operates to bar the trial court from considering the appellant's Writ for Habeas Corpus as Testificandum. We note, however, that despite the absolute language of the statute, relevant case law supports the proposition that the constitutional rights to due process and reasonable access to the courts may sometimes require that a party litigant be personally present in court, even if that litigant is incarcerated.

In *Whisnant v. Byrd*, 525 S.W.2d 152, 154 (Tenn. 1975), for example, our Supreme Court cited Article 1, Secs. 12 and 17 of the Tennessee Constitution, which provide respectively that "no conviction shall work corruption of blood or forfeiture of estate," and that "every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law." The interaction between these provisions led the court to hold that "a prisoner has a constitutional right to institute and prosecute a civil action seeking redress for injury or damage to his person or property, or for vindication of any other legal right . . .," and consequently ". . . in a proper case, and upon a proper showing of particularized need, the trial judge, in his discretion, may issue an appropriate directive requiring the attendance of the prisoner."

In *Tolbert*, supra, the court noted the paucity of Tennessee cases dealing with the rights of incarcerated defendants in civil suits to be personally present at their trials, and sought guidance from other jurisdictions that have considered the question. The court found a helpful discussion of the reported cases to be contained in 82 A.L.R. 4th 1063 (1990).

The court cited with approval the lead case in that discussion, an en banc decision of the Arizona Supreme Court, *Strube v. Strube*, 764 P.2d 731 (Ariz. 1988). The *Strube* court held that:

> "Prisoners have a right of access to the courts for legitimate purposes. At least with respect to a significant civil proceeding initiated against a prisoner by others, we hold that there is a presumption that the prisoner is entitled to be personally present at critical proceedings, such as the trial itself, when he has made a timely request to be present. Of course this is a rebuttable presumption and the ultimate decision is within the sound discretion of the trial court."

764 P.2d at 735.

The *Strube* Court also said that "[t]he court's discretion should be exercised after balancing the interest of the prisoner against the interests of the other parties and the state, including the authorities having custody of the prisoner." 764 P.2d at 734.

While the *Tolbert* Court did not go so far as to hold that Tennessee had adopted the rebuttable presumption discussed above, it did place the question of whether to permit a prisoner/defendant in a civil case to be physically present at court within the trial court's sound discretion, and instructed the court that its discretion was to be exercised with the best interest of both the prisoner and the government in mind.

The following language, quoted in both the *Strube* and *Tolbert* opinions, is worth repeating for the guidance of trial courts that must exercise their discretion when faced with this question:

> "If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of prison, that he is capable of conducting an intelligent and responsible argument, and that his presence in the courtroom may be secured without undue convenience or danger, the court would be justified in issuing the writ."

*Price v. Johnston*, 334 U.S. 266 at 284-85, 68 S.Ct. 1049 at 1059-60, 92 L.Ed. 1356 at 1369 (1948). And

> "[the judge] should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition."

*Stone v. Morris*, 546 F.2d 730, 735-36 (7th Cir.1976).

In the *Tolbert* case, supra, the court affirmed the trial court's denial of the defendant's Motion for Writ of Habeas Corpus ad Testificandum, and vacated the trial court's decree on the question of insufficient notice alone. The court found that "the Trial Judge did not abuse his discretion and properly refused Mr. Tolbert's request to be present." However in the present case, the trial court did not rule on the defendant's motion, and thus failed to exercise its discretion.

We accordingly remand this case to the trial court for a new trial, with instructions to grant the defendant's Motion for a Bill of Particulars, and to issue a ruling on his Motion for Writ of Habeas Corpus ad Testificandum, setting out in its order the reasoning behind its decision.

**IV.**

- 8 -

The decree of the trial court is vacated. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE