IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 12, 2004

## GILBERT LEE SMITH v. BETTY DARMOHRAY

**Appeal from the Juvenile Court for Rutherford County**
**No. 1953C    Donna A. Scott, Judge**

---

**No. M2003-00236-COA-R3-JV - Filed April 27, 2004**

---

In this appeal a father seeks review of the juvenile court's refusal to modify his child support obligation.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and FRANK G. CLEMENT, JR., JJ., joined.

Stephen Walker Pate, Murfreesboro, Tennessee, for the appellant, Gilbert Lee Smith.

David R. Kennedy, Nashville, Tennessee, for the appellee, Betty Darmohray.

**OPINION**

I.      PROCEDURAL HISTORY

This appeal originates from a Petition to Legitimate, Set Child Support and Visitation filed on behalf of Gilbert Lee Smith (the father) in April of 1998.  The mother, Betty Darmohray filed her Answer and Counter-Claim seeking, *inter alia*, back child support dating from the child's birth on May 24, 1997, and requesting the provision of medical insurance and reimbursement for medical expenses incurred.  In his response to the counter-claim the father admitted one hundred percent ownership of Precision Homes, Inc., and admitted receiving $60,000 annual salary from that corporation.  On August 28, 1998, the juvenile court entered an order setting child support at $757 per month:

> 4.      The Petitioner shall pay to Respondent $757 by the first (1st) day of
> every month pursuant to the Tennessee Child Support Guidelines based on a gross
> monthly salary of $5000.  The Respondent reserves any argument until the final

hearing of this cause as to whether or not this is the correct amount of Petitioner's salary and does not waive such argument. All issues regarding whether or not Petitioner is in arrears and as to what amount of arrearage is reserved until the final hearing of this cause.

After the entry of this order, the record reveals a contentious relationship between the parents concerning the exercise of visitation or lack thereof on the part of the father, as well as continuing disputes concerning reimbursement for medical expenses and provision of insurance pursuant to the order. Despite their differences, the parties entered into an Agreed Order on November 24, 1998, containing the following support language:

> 4. The Father shall pay child support payments and mail such directly to the Mother's home address pursuant to the Tennessee Child Support Guidelines in the sum of $757 which will be paid by the first (1st) day of each month based on an annual gross income of $60,000 until the child reaches 18 years of age or graduates from high school with the class of which she is a member, whichever occurs last pursuant to T.C.A. 34-1-101(b). The Father shall pay $200 by the first (1st) of each month and mail such directly to the Mother's home address until the child support arrearage in the amount of $3855 is paid in full.

Subsequent to the entry of the Agreed Order, upon the advice of his accountant Claudia Burke, Ph.D., the father began reducing the expenses of Precision Homes, Inc. Chief among these reductions was his own salary, which by December 11, 2001 was reduced to $3,000 per month.

On December 11, 2001, the father filed a Petition for Contempt, to Reduce Child Support and to Modify Visitation. In that petition the father alleged that since the date of the Agreed Order there had been a material change in circumstances warranting modification of the support payments and that the decrease in the father's gross income constituted a significant variance contemplated by the Tennessee Child Support Guidelines warranting reduction of support. Again the mother answered and counter-claimed for contempt.

The petition was eventually heard over two days, July 3 and September 10 of 2002. On the first day of the hearing, the father, with benefit of counsel, presented extensive testimony from Dr. Burke concerning the financial position of Precision Homes, Inc., and Dr. Burke's work for Precision Homes and for the father in filing the corporate and individual tax returns. She testified that she counseled the father to aggressively pursue all deductions for depreciation consistent with section 179 of the Internal Revenue Code. She testified that the corporate returns reflected losses suffered by Precision Homes in the amount of $55,000+ in 1999, $16,000+ in 2000, and $24,000 in 2001. She testified at length concerning the strategy to reduce the corporate tax. She also stated that, in view of the continuing losses, the father reduced his salary to a draw of $3,000 per month. Upon cross-examination the mother's counsel elicited testimony that, in addition to the salary from Precision Homes, Inc., the father also held fairly extensive rental property having a cost basis of over $1,000,000. Dr. Burke testified to the existence of Precision Homes Racing, LLC, owned by father,

which operated a car racing team. She could provide no information, however, as to the current value of the rental property. She likewise provided limited specific information concerning property owned in the LLC's name.

At the conclusion of Dr. Burke's testimony, and after some argument by counsel on the record, the trial court continued the hearing until September 10, 2002. The father was granted a temporary reduction in child support pending the conclusion of the hearing. On August 8, 2002, the father's counsel filed a Motion to Withdraw, which was granted on August 16. On the second day of testimony, September 10, 2002, the court heard from the mother. The father who appeared now without counsel, was given the opportunity to examine and call any other witnesses on his behalf. On the second day of testimony the only proof offered by the father was an attempt to qualify a Ms. Mickie Miller as an expert in examining the medical bills submitted by the mother for reimbursement. Following the second day of testimony the court entered its order finding that the father had ample assets from which to pay the support obligation:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Father's request for reduction in his monthly child support obligation shall be and is herewith denied. The court permitted a temporary reduction in Father's monthly child support obligation from $757.00 to $657.00, for the months of July, August and September, 2002. However, the court finds upon examination of all of Father's financial records that he has adequate assets with which to continue paying his original support obligation. Commencing on the first day of October and continuing on the first day of each consecutive month hereafter, Father shall pay directly to Mother the sum of $757.00 per month as child support for the support and maintenance of the parties' minor child and said support payments shall continue until such time as the parties' minor child shall have graduated from high school with her regularly scheduled class or shall have attained her 18th birthday whichever event shall last occur.
>
> Father shall see to it that each child support payment is postmarked with sufficient time so that each payment is received by Mother no later than the due date of said child support payment. The foregoing child support is based upon the evidence of Father's financial capacity as well as his federal tax returns, earnings history and present income and is therefore in compliance with TDHS Child Support guidelines.

II.      THE PROOF

After obtaining new counsel and unsuccessfully arguing a Motion for New Trial, the father filed his Notice of Appeal challenging only the trial court's refusal to order a modification in the child support obligation. The father argues on appeal that the uncontradicted testimony of Dr. Burke establishes his sole source of income as his salary. We are unpersuaded by this characterization of Dr. Burke's testimony.

Q.      (By Ms. Powell)  Do you have any knowledge as to what compensation he's currently receiving year to date for 2002 from the corporation?
A.      Only what he drew in January and February.  And I believe, like I said, it's about - - I don't have documents, but I want to say he put $3,000 a month as what he was drawing.
        MS. POWELL:  All right.  That's all I have, your Honor.

This exchange on re-direct examination follows direct and cross-examination in which Dr. Burke testified not only to the information contained in Precision Homes, Inc.'s corporate returns, but also the father's commissions earned from real estate transfers as well as income from rental property owned at least in part by the father.  The following testimony is of particular importance:

Q.      Okay.  Now, when you prepared this information, to the best of your knowledge was this all of the residential rental property that Mr. Smith and his then wife, Mrs. Smith, had an interest in the calendar year 1999?
A.      Yes, sir.
Q.      And if my math is anywhere close to right, would you agree that that's about a million bucks worth of real estate?
A.      Correct.
Q.      And this doesn't include the house he's living in, does it?
A.      No.  That's not rental property.
Q.      He doesn't get to take it.
A.      Right.
Q.      And it doesn't include any houses he might have bought or sold that he lived in as his primary residence, does it?
A.      As long as it wasn't rental.  This would only count for rental property period.
Q.      Okay.  All right.  But are these the properties that are, are they not, that are either solely in his name or in his name and his present spouse?
A.      I have no knowledge whose name it's in, to be honest with you.
Q.      Well, you couldn't take it on a personal return if it wasn't titled to him, could you?
A.      Certainly, I would not suggest that.  That would - -
Q.      That would be illegal.
A.      Yes.

        * * *

Q.      (By Mr. Kennedy)  Now, do you know whether or not any of those properties that are part of collective Exhibit No. 15 - - whether any of them have now been sold or liquidated?
A.      We can make a comparison to the 2000 or 2001 return and take a look, although to my knowledge there hasn't been any sales.
Q.      Has he specifically said to you, "I've sold some of my rental property"?

-4-

A.	No. I can't remember a conversation where that came up, but that would have to show up on a separate form on your tax return if you sold it.

Q.	This is investment property for him, is it not?

A.	Usually real estate is investment. Yes, sir.

In addition to Dr. Burke's testimony, the father submitted corporate and individual tax returns as exhibits to the Dr.'s testimony. Depending on the weight given to the father's claim for depreciation costs, his average income for child support purposes ranged from $47,000 over the four year period preceding the hearing to an average of $60,000 over the same four year period.

III.	THE FATHER'S BURDEN

The appellate standard of review in this case is clear. We review the record *de novo* with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn.R.App.P. 13(d) *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000); *Farrar v. Farrar*, 553 S.W.2d 741, 743 (Tenn. 1977). It is also well settled that the burden rests upon petitioner to prove a significant variance between the obligation applicable to his alleged current income and the original child support obligation. *Turner v. Turner*, 919 S.W.2d 340, 345 (Tenn.Ct.App. 1995). Broad discretion is afforded the trial court in its child support determinations. That discretion is bounded on all sides by the child support guidelines and should not be disturbed on appeal unless this Court finds in its *de novo* review that the evidence preponderates against that finding. *See Butler v. Butler*, 680 S.W.2d 467 (Tenn.Ct.App. 1984). The disjunctive nature of the petitioner's proof creates an evidentiary problem that cannot be resolved in his favor. What was promised on July 3 to be a cogent explanation of the various sources of gross income for Mr. Smith, *i.e.*, the salary from his corporation, Precision Homes, Inc., any income realized from the racing enterprise, Precision Homes Racing, LLC, the history of the rental income from his various leasing enterprises, and his commissions from real estate transactions in which he acted as agent, had disintegrated to the point of providing less than satisfactory proof as to actual gross income earned as gross income is defined under the Child Support Guidelines. *See* Tennessee Compilation of Rules and Regulations 1240.4-.03. The trial court was presented with extensive cumulative exhibits concerning the corporate returns of Precision Homes as well as the individual tax returns from Mr. Smith. At no point, however, did the trial court hear from Mr. Smith directly concerning the actual gross income received by him, much less how that income had shrunk as had been alleged in Mr. Smith's petition. As we have opined in the past:

Our courts have consistently held that parties seeking relief have the ultimate burden of proof (the risk of nonpersuasion) and that this burden never shifts. *Nichols v. Nichols*, 792 S.W.2d 713, 715 (Tenn.1990); *Freeman v. Felts*, 208 Tenn. 201, 210, 344 S.W.2d 550, 554 (1961); *Winford v. Hawissee Apartment Complex*, 812 S.W.2d 293, 295-96 (Tenn.Ct.App. 1991). Professor Wigmore has noted, however, that this principle is not an "invariable test," 9 John H. Wigmore, *Evidence in Trials at Common Law* § 2486, at 288 (rev.1981), and that this proof should take its place beside the other considerations relevant to allocating the burden of proof. In

Professor Wigmore's analysis, the most important consideration to be kept in mind is that the burden of producing evidence should be placed on the party who presumably has primary control over or knowledge of the evidence. 9 Wigmore, *supra*, § 2486, at 290-91.

*Kirchner v. Pritchett*, 1995 WL 714279, *3 (Tenn.Ct.App.).

The father has not met this burden. The evidence does not preponderate against the trial court judgement, which is in all respects affirmed. Costs are assessed against Appellant and the case remanded to the trial court.

_____
WILLIAM B. CAIN, JUDGE