IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2010 Session

## DAWN ANN DAVIS (GOODWIN) v. DANIEL PACE GOODWIN

Direct Appeal from the Chancery Court for Shelby County
No. CH-02-1803      Kenny W. Armstrong, Chancellor

No. W2010-01340-COA-R3-CV - Filed December 23, 2010

In this divorce case, Wife appeals the trial court's division of marital property. She asserts that the parties' marital residence is her separate property and that the trial court erred in awarding Husband a share of the net proceeds following its court-ordered sale. Wife contends that she purchased the property during the marriage with her separate, premarital funds, that it was titled and financed in her name only, and that she paid the mortgage, taxes, and insurance on the property. We agree that the trial court erred and conclude that the marital residence is Wife's separate property. However, because the property increased in value during the marriage, we remand to the trial court to determine whether Husband substantially contributed to its preservation and appreciation. Reversed and Remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Mitchell D. Moskovitz and Adam N. Cohen, Memphis, Tennessee, for the appellant, Dawn Ann Davis (Goodwin).

Ted I. Jones, Memphis, Tennessee, for the appellee, Daniel Pace Goodwin.

**OPINION**

**I. Facts and Procedure**

This has been a long and contentious divorce. Appellant, Dawn Ann Davis (Goodwin) ("Wife"), and Appellee, Daniel Pace Goodwin ("Husband"), were married on June 11, 1993, in Shelby County, Tennessee. This was each party's second marriage. No children were born during the marriage.[1] On October 1, 2002, Wife filed a Complaint for Divorce in the Shelby County Chancery Court alleging grounds of irreconcilable differences, inappropriate marital conduct, and cruel and inhuman treatment. Husband filed his Answer on February 6, 2003, admitting that irreconcilable differences existed between the parties, but denying all other material allegations. A hearing was held on March 4, 2003, and the trial court entered a Final Decree of Divorce on May 30, 2003, which memorialized certain stipulations made by the parties and ruled on the remaining disputed issues. Both parties moved for a new trial. By Order dated October 6, 2003, the trial court granted a new trial and set aside the Final Decree of Divorce in all respects, except for the declaration that the parties remained divorced by stipulation.[2]

A second divorce hearing was held on May 24, 2005. As relevant to this appeal, the court heard extensive, yet conflicting testimony regarding the parties' financial arrangements and contributions to the marriage. Wife worked as a mortgage banker, earning between $40,000 – $100,000 annually during the course of the marriage. She was the primary earner in the marriage and also managed the parties' finances. Wife endeavored to keep the parties' finances separated; each maintained separate bank accounts, and she kept detailed records tallying credits and debits between Husband and Wife. Husband was not employed when the parties married and worked outside the home only sporadically during the marriage.[3] While the parties' maintained separate bank accounts throughout their marriage, both testified that Wife paid the parties' bills out of her accounts. Husband testified that he deposited money into Wife's bank accounts; however, the frequency and amount of these deposits was disputed. At trial, Husband introduced a chart, purporting to summarize Wife's check registers, which showed that he made deposits totaling $188,495 into Wife's checking account and $27,100 into her savings account. Wife denied that Husband ever made deposits

---

[1]Husband has three children from a previous marriage who lived with the parties during their marriage.

[2]No court reporter was present at the March 4, 2003, hearing. In its Order of October 6, 2003, the trial court found that "a new trial is warranted due to the fact that the Court has no recollection of the matters contained in each parties respective motions for new trial and there was not a court reporter present at trial and therefore no transcript available . . . for the Court to review."

[3]The extent of Husband's employment and earning history was only partially developed at trial. For example, Husband's federal tax returns show an adjusted gross income of $90,303 in 1998, but only $13,739 in 2003. Husband also testified that he received money from his father, though no specific amounts were given.

into her savings account, and contended that the true amount of Husband's deposits into her checking account was $81,560.

At the time the parties were married, each owned their own home, and they continued to live separately in their respective homes for the first two years of marriage. In July 1995, Wife sold her premarital home and moved into Husband's premarital home.[4] In November 1995, Wife purchased what came to be the marital residence (the "Green Knoll property") for $200,000. Wife used approximately $41,000 from her savings account for the down payment and closing costs on the Green Knoll property. The property was titled in Wife's name only, and she took out a $160,000 mortgage in her name only. Wife testified that she paid the mortgage, taxes, and insurance on the Green Knoll property, and also paid for substantial repairs, improvements, and renovations. After several refinances, the mortgage balance at the date of divorce was stipulated to be $169,639.

The parties spent significant time and money renovating the Green Knoll property. Wife testified that she spent approximately $160,000 renovating the home, which she maintained came exclusively from her separate accounts. Husband, whose employment background was in construction, provided much of the labor and on-site management for the renovation work.[5] Whether the parties agreed that Husband would work on the house in lieu of gainful employment was disputed; however, Wife admitted that Husband essentially worked as a general contractor for the renovations, hiring and supervising laborers and performing work himself as necessary. Husband was not paid separately for his work on the house, though Wife maintained that she paid for his personal expenses. Unfortunately, Husband's workmanship was lacking, and the renovations that he performed were often shoddy and poorly done.

Wife testified that Husband would often start a project, then abandon it halfway through, and that certain renovation projects that he started when the home was purchased had not been completed by the time the parties divorced seven years later. Wife gave numerous examples of what she described as substandard work performed by Husband, including: a Jacuzzi tub that lacked sealant and would not hold water; an added shower with cracks in its floor from improper installation; loose marble tiling surrounding an added fireplace; a living room wall hung with no studs; and leaking, unrepaired skylights throughout the home. Perhaps the *coup de grâce* was Husband's unfinished construction of a detached two-story garage. The permits that were obtained for the construction of the

---

[4]Husband's premarital home was foreclosed on in June 1996, and is not at issue on appeal.

[5]Husband testified that he also spent money on the renovations, such as paying workers. However, Husband paid in cash and, therefore, did not have records of these expenditures.

garage had either expired or were incorrect. Consequently, no valid permit existed for the construction of a detached garage. A Germantown codes enforcement officer testified that, pending the outcome of this case, the garage would either have to be attached to the house via a breeze-way or demolished. According to Wife's testimony, the home also fell into a state of disrepair while in Husband's exclusive possession after Wife moved out pending divorce.[6] She claimed that the house possessed a strong odor caused by pet urine that had not been cleaned up, that there were holes in the walls, and that the floors, walls, and ceilings were stained. Wife further alleged that Husband had failed to winterize the parties' outdoor hot tub, pool, and mermaid fountain, which rendered each useless. Husband denied that he had left the home in this condition.

Notwithstanding Husband's handiwork, or lack thereof, an appraisal performed in 2003 placed the home's value at $320,000.[7] The appraiser's report noted the home's flaws:

> My overall impression of the interior was it lacked consistency. There was such a variety of colors and floor surfaces. The additions and updates were not consistent throughout the home. The lack of consistency and the evidence of leaks, questionable installation of the bathroom fixtures and sitting room fireplace raised questions of the structural soundness of the subject. The pet odor which was throughout the house and several spots of what appeared to be dried urine stains were observed.

The appraisal went on to indicate three things that negatively affected the market value of the home: (1) the inconsistency of the updates and reliability of the workmanship of the improvements; (2) the unfinished garage; and (3) signs of deferred maintenance such as the presence of leaks and pet odor. The appraisal concluded that:

> Due to [the] subject's condition and the availability of superior homes in the area, the typical buyer in the Germantown/Collierville market would not be attracted to the subject. The subject has a large gross living area but lacks the quality of construction of the area properties which surround it.

---

[6]Wife moved out of the marital home voluntarily in approximately September 2002, leaving Husband in exclusive possession. Wife testified that she retook possession of the home following the March 4, 2003, hearing in which Husband was sentenced to ten days in jail for contempt of court and ordered to vacate the marital home.

[7]At trial, Husband asserted the home's value to be $450,000, though this figure was unsupported by corroborating evidence.

The subject in its current condition would have difficulty competing in the Germantown/Collierville market, due to there being little demand for "fixer uppers" in the area. To achieve a higher value for the subject, the above mentioned items would need to be addressed. Based on the Marshall & Swift's cost manual the estimated cost to cure the above items is estimated at $43,000. . . . The majority of the $43,000 cost is represented by finishing the garage.

In summary, it is this appraiser's opinion that, after original purchase of the subject, the owners chose to make room additions instead of improving or updating the existing components of the subject. This resulted in, additions which should have improved the value of the home appear to have had the opposite effect. Due to the job not being finished, signs of questionable workmanship, and general lack of consistency. In essence, they spread themselves out too thin and as a result they compromised the initial investment they made on the home.

Following the conclusion of the proof, the trial court entered a second Final Divorce Decree on June 29, 2005. As relevant to this appeal, the trial court ordered the Green Knoll property to be sold on the courthouse steps with Wife receiving 75% of the net proceeds and Husband receiving 25%. The court set the minimum acceptable bid at $170,000, which was the approximate balance owed on the mortgage at the time of divorce. Because Wife had been making the mortgage payments since the date of divorce, the court further ordered that she was to receive the difference between $170,000 and the actual pay-off of the existing mortgage.[8]

Husband filed a Motion to Alter or Amend the Judgment on July 29, 2005, which the trial court granted, and an Amended Final Decree of Divorce was entered on December 1, 2005.[9] Wife appealed the Amended Final Decree of Divorce to this Court on December 29,

---

[8]During the pendency of the divorce, Wife encumbered the Green Knoll property with a home equity line of credit in violation of the statutory injunction against such an encumbrance. *See* Tenn. Code Ann. § 36-4-106(d)(1)(A). In its Amended Final Decree of Divorce, the trial court held her in civil contempt of court and further ordered that "Wife shall pay the full balance on the second mortgage incurred solely by Wife on or about August 2004." This second mortgage is not at issue on appeal and does not affect the trial court's division of proceeds from the sale of the Green Knoll property.

[9]As relevant here, Husband requested that the judgment be altered or amended to allow him to obtain pre-approved financing in order to refinance the Green Knoll property. The trial court granted this request

(continued...)

2005; this appeal was dismissed for failure to appeal a final judgment or order.[10]  After procuring a final judgment, Wife timely appealed.[11]

## II.  Issues Presented

Wife has raised the following issues on appeal, as stated in her brief:

> (1)  Did the trial court err in its determination that the [Green Knoll] property . . . is a marital asset?
>
> (2)  In the alternative, did the trial court err or reach an unjust result by ordering the [Green Knoll] property . . . be sold on the courthouse steps, with Husband receiving twenty-five percent (25%) of the net proceeds?
>
> (3)  Did the trial court err by admitting into evidence as Exhibit 24 Husband's Rule 1006 chart of alleged contributions to Wife's bank accounts?

## III.  Analysis

The division of marital property, including its classification and valuation are findings of fact. *Woodward v. Woodward,* 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007).  Trial courts have "wide latitude in fashioning an equitable division of marital property." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005).  Accordingly, the trial court's decisions regarding classification, valuation, and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *Farrar v. Farrar*, 553 S.W.2d 741, 743 (Tenn. 1977).

---

[9](...continued)
in its Amended Final Decree of Divorce "so long as Husband's application and/or approval [for refinancing] . . . does not in any way cloud title to the property, and does not delay the sale."

[10]The trial court's Amended Final Decree of Divorce provided for the appointment of a Special Master in the event the parties could not agree on what personalty constituted the separate property of each party.  This had not been done at the time that Wife appealed to this Court.  Following our dismissal of Wife's appeal, a Special Master was appointed and a report was filed with the trial court on March 6, 2009.  On March 16, 2009, Husband filed his Exceptions to the Report of the Special Master.  Wife filed her Response to Husband's Exceptions on August 31, 2009.  Wife then filed a Motion to Dismiss for Lack of Prosecution on February 16, 2010, which was denied.  A hearing was held on Husband's exceptions on March 9, 2010, which were all denied, and an Order confirming the Special Master's report was filed on March 26, 2010, thus creating a final, appealable judgment.

[11]Chancellor D.J. Alissandratos presided over this case until his retirement on August 31, 2006. After Chancellor Alissandratos' retirement, subsequent proceedings were heard by Chancellor Kenny Armstrong.

When making its division of property, the trial court must first classify the property. Tennessee recognizes two distinct types or classes of property: "marital property" and "separate property." The distinction is important because Tenn. Code Ann. § 36-4-121(a) "provides only for the division of marital property." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). As a general rule, assets acquired by either spouse during the marriage are presumed to be marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A); *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Similarly, assets acquired by either spouse prior to the marriage are presumed to be separate property. Tenn. Code Ann. § 36-4-121(b)(2)(A); *Owens,* 241 S.W.3d at 485. "Thus, the classification of all assets acquired by either spouse during the marriage begins with the presumption that the asset is marital." *Owens*, 241 S.W.3d at 485 (citing *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *4 (Tenn. Ct. App. Sept. 1, 2006)). "A party asserting that an asset acquired during the marriage is separate property has the burden of proving by a preponderance of the evidence that the asset is separate property." *Owens,* 241 S.W.3d. at 485-86 (citing *Goulet v. Heede*, No. E2000-02535-COA-R3-CV, 2002 WL 126279, at *5 (Tenn. Ct. App. Jan. 31, 2002); *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998)). "The types of evidence that will be sufficient to rebut the presumption that an asset acquired during the marriage is marital property are found in Tenn. Code Ann. § 36-4-121(b)(2)(B)-(F)." *Owens*, 241 S.W.3d at 486.

In this case, the trial court did not make a specific finding that the Green Knoll property was marital property when it equitably divided the net proceeds pending its court-ordered sale. However, we can logically infer that the trial court found it to be marital property because, as noted above, Tenn. Code Ann. § 36-4-121(a) "provides only for the division of marital property." *Batson*, 769 S.W.2d at 856. Wife asserts that the trial court erred when it implicitly characterized the property as marital. We note initially that Wife purchased the property in 1995, after two years of marriage, thus raising the presumption that it is marital property. Tenn. Code Ann. § 36-4-121(b)(1)(A); *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). She seeks to overcome this presumption by asserting that the Green Knoll property was "acquired in exchange for property acquired before the marriage," which, pursuant to Tenn. Code Ann. § 36-4-121(b)(2)(B), would make it separate property. Specifically, Wife contends that the Green Knoll property is separate property because it was purchased with the proceeds from the sale of her premarital home and her savings.

The facts of this case are similar to *Barnett v. Barnett*, No. 01A01-9706-CV-00244, 1998 WL 122717 (Tenn. Ct. App. March 20, 1998). In *Barnett*, the wife purchased a home shortly after the marriage. *Id.* at *1. The wife made a substantial down payment from her separate funds, titled the property in her name only, and was the only party obligated on the

mortgage. *Id.* During the marriage, the husband contributed one-half of the mortgage payments and also contributed to taxes, insurance, and improvements on the home. *Id.* The trial court found the home to be the wife's separate property, and this Court affirmed that finding pursuant to Tenn. Code Ann. § 36-4-121(b)(2)(B). In the case at hand, Wife owned her own home at the time the parties were married in 1993. She sold this home in 1995, netting $22,590 in cash proceeds, which she deposited into a savings account held in her name only. Wife's banking records indicate that she then withdrew approximately $41,000 from her savings account to fund the down payment and closing costs associated with the purchase of the Green Knoll property. The property was titled in Wife's name only, and she was the only person obligated on the mortgage. Husband does not dispute these facts. Consequently, we are able to determine that Wife used approximately $41,000 of her separate, premarital funds to purchase the Green Knoll property. Thus, pursuant to Tenn. Code Ann. § 36-4-121(b)(2)(B), Wife has proven, by a preponderance of the evidence, that she acquired the Green Knoll property "in exchange for property acquired before the marriage."

However, that determination does not end our inquiry. Husband contends that, even if the Green Knoll property is Wife's separate property, he is entitled to share in its appreciation in value. Tenn. Code Ann. § 36-4-121(b)(1)(B) provides that "'[m]arital property' includes . . . any increase in value during the marriage of, property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation." Thus, there are "two prerequisites which must be met before a non-owner spouse may claim an interest in the increased equity on separate property." *Cohen v. Cohen*, 937 S.W.2d 823, 833 (Tenn. 1996). "First, the increase in equity . . . must have occurred during the marriage." *Id.* "Second, the non-owner spouse must have made a substantial contribution to the increase. . . ." *Id.*

The first prerequisite is that the increase in value must have occurred during the marriage. *Id.* "Our courts have consistently interpreted the phrase 'any increase in value' as all inclusive." *Id.* at 832-33 (citing *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988)). Such an increase in value may be from an increase in equity as debt is reduced or from appreciation in the fair market value of the home. *Brooks v. Brooks*, No. W2008-02349-COA-R3-CV, 2009 WL 2588908, at *5 (Tenn. Ct. App. Aug. 24, 2009). Here, Wife purchased the property in 1995 for $200,000, with a mortgage of $160,000. At the time of the divorce in 2003, an appraisal indicated the home's market value was $320,000, with an outstanding mortgage balance of $170,000. The appraisal also indicated that the property would require $43,000 in repairs in order to make it marketable; however, notwithstanding this fact, it is clear from the evidence before us that the property increased in value during the marriage.

The second prerequisite is that the non-owner spouse must have made a substantial contribution to the increase. *Cohen*, 937 S.W.2d at 833. Tenn. Code Ann. § 36-4-121(b)(1)(D) provides that "'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine." The parties' contributions may be direct or indirect, but they must satisfy two requirements. *Keyt v. Keyt*, 244 S.W.3d 321, 329 (Tenn. 2007) (citing *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007)). "First, the contributions must be 'real and significant,'" and "[s]econd, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." *Keyt*, 244 S.W.3d at 329 (quoting *McFarland*, 2007 WL 2254576, at *6).

In *Barnett*, discussed above, the trial court credited the husband for his contributions to the home's mortgage payments and improvements, and allocated to him a portion of the home's increased equity, which this Court affirmed. *Barnett v. Barnett*, No. 01A01-9706-CV-00244, 1998 WL 122717, at *4-5 (Tenn. Ct. App. March 20, 1998). However, in this case, because the trial court implicitly found the Green Knoll property to be marital property, it never made a determination as to whether Husband substantially contributed to its preservation and appreciation pursuant to Tenn. Code Ann. § 36-4-121(b)(1)(B). Therefore, it never considered the relevant statutory factors contained in Tenn. Code Ann. § 36-4-121(b)(1)(D). Because the trial court's focus was on the property as a marital asset, the record before us is incomplete and undeveloped on this issue, and we are unable to make such a factual determination. Therefore, we remand this case to the trial court for a determination of whether Husband substantially contributed to the preservation and appreciation of the Green Knoll property. If the trial court determines that he did not, then any increase in the value of the Green Knoll property will remain Wife's separate property. However, if the trial court determines otherwise, then the increase in value will be subject to an equitable division as marital property.

Additionally, at oral argument both parties requested relief from the trial court's order requiring that the property be sold on the courthouse steps. Due to the change in economic conditions since 2005, the parties assert that this method of sale would not yield an economically fair result. On remand, if the trial court determines that any increase in value of the Green Knoll property is marital property, subject to division, then it should also determine whether a sale on the courthouse steps is a fair resolution in light of the current economic conditions and any other relevant factors, and should dispose of the property accordingly. All other issues are pretermitted.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's determination that the Green Knoll property was marital property subject to equitable division. We conclude that the Green Knoll property is Wife's separate property. However, because we determine that the Green Knoll property increased in value during the marriage, we remand to the trial court for a determination as to whether Husband substantially contributed to its preservation and appreciation. Additionally, if the trial court determines that the increase in value is marital property, then it should also determine whether a sale on the courthouse steps is a proper method of sale for the parties. Costs of this appeal are taxed to Appellee, Daniel Pace Goodwin, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE