# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 17, 2015 Session

## DARREN DWAYNE BRACEY v. KIMBERLY ANN ROBERTS BRACEY

**Appeal from the Circuit Court for Robertson County**
**No. 74CC12013CV278     Ross H. Hicks, Judge**

_____

**No. M2014-01865-COA-R3-CV – Filed 26, 2016**

_____

In this divorce action, Wife contends the trial court erred in the division of marital property and by declining to award her alimony. Wife also contends the trial court erred by permitting her counsel of record to withdraw, denying her recusal motion, and denying her requests for disability modifications. We affirm the trial court in all respects. We also find Wife's appeal frivolous and remand for the trial court to award Husband his reasonable and necessary fees and expenses incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Paula Ogle Blair, Nashville, Tennessee, for the appellant, Kimberly Ann Roberts Bracey.

Edward Lee Hiland, Nashville, Tennessee, for the appellee, Darren Dwayne Bracey.

## OPINION

Darren Dwayne Bracey ("Husband") and Kimberly Ann Roberts Bracey ("Wife") married on August 22, 1999. There are no children of this marriage.

In 2008, the parties separated and a complaint for divorce was filed in the Chancery Court for Sumner County, Tennessee (the "2008 divorce"). While the 2008 divorce was pending in Sumner County, the parties divided the marital property pursuant to the requirements of their prenuptial agreement by selling their marital home in Sumner County, distributing to each party their respective original investment, and dividing equally the net proceeds from the sale of the home. Thereafter, the parties reconciled,

abandoned the 2008 divorce, and Wife moved into Husband's new home in Robertson County.[1] Husband later added Wife's name to the deed. The reconciliation did not last.

Husband commenced this action on June 20, 2013, by filing a complaint for divorce in the Circuit Court for Robertson County on the grounds of irreconcilable differences and Wife's inappropriate marital conduct. Husband amended his complaint to include the ground of abuse of narcotic drugs. Contemporaneous to filing his divorce complaint, Husband filed a Motion for Access to Real Estate and for Pendente Lite Support.[2] Wife filed an answer and counter petition for divorce alleging irreconcilable differences, inappropriate marital conduct, abuse of narcotic drugs, adultery, and failure to support. Wife also filed a response to Husband's Motion for Access to Real Estate and requested an award of pendente lite support.

Husband's Motion for Access to Real Estate and for Pendente Lite Support and Wife's Motion for Pendente Lite Support were heard on July 16, 2013. Both parties testified as to their incomes, available funds, and the expenses of their everyday lives. Concerning the expenses for the marital home, Husband testified that he paid all mortgage payments, utilities, and maintenance expenses for the home. Wife testified that she had paid the utilities while Husband was restrained from the marital home.

Following the hearing, the trial court found, *inter alia*, that no legal impediment existed denying Husband access to the marital home but that "for numerous reasons," the parties should not live in the same residence. The court determined that Husband should reside in the marital home, finding him to be the only party gainfully employed and able to pay the expenses of the marital home. Further, the court found that Wife was in need of temporary support in order to provide herself a residence and ordered Husband to pay Wife $700.00 as temporary support. The court ordered Wife to leave the home by July 31, 2013, and to "leave the home and personalty in good order" and "not remove any personal property of [Husband]." A few days later, on July 22, 2013, Wife filed a Motion for an Extension of Time to Move from Marital Residence and Additional Funds to Pay for Moving Expense. The motion alleged that Wife needed more time to find a suitable residence and money for the move. A hearing on Wife's motion was held on August 1,

---

[1] During the pendency of the 2008 divorce, Husband inherited $50,000 from his parents and used the inheritance towards the purchase of a home in Robertson County.

[2] In the weeks prior to filing for divorce, Husband was arrested on a criminal charge of domestic violence brought by Wife, and as a condition of bond, Husband was restrained from the marital residence. Following a preliminary hearing in the Robertson County General Sessions Court, Husband was found not guilty and the bond conditions were set aside. Immediately thereafter, Wife unsuccessfully attempted to obtain an order of protection in Robertson County. Wife then proceeded to obtain an order of protection in the Sumner County Chancery Court, which required Husband to stay away from Wife, who was then residing in the marital home. The order of protection was dismissed for lack of venue. Wife attempted to transfer the order of protection to Robertson County; however, Wife's motion was denied.

2013, at which time the court noted that Wife's motion was filed a few days after the court's order and prior to her actually looking for housing. Nevertheless, the court allowed Wife until August 15, 2013, to move from the home.

Wife moved from the home on August 15, 2013. However, according to Husband, when he returned to the home he discovered that Wife had removed his personal property, including cash; the interior of the house had been virtually stripped of the furniture and other household items; physical damage was done to the interior of the home; both hardware and electronic locks had been changed, which prevented his entry to the home; the outdoor spa had been damaged so as to make it unusable; and Wife had not paid any of the utilities since he was restrained from the home. Husband filed a Petition for Contempt and Modification of Support on August 16, 2013, alleging that the Wife was in contempt for her actions and had perjured herself with regard to her finances and the amount of funds she had at her disposal.

Following a hearing on Husband's Petition for Contempt and Modification of Support, the court found that Wife had purposely misled the court and that her testimony was not reliable.[3] The court ordered no further payment of support by Husband. The court also held that civil contempt could not be found for Wife's perjury because Wife could not purge herself of contempt for those acts. However, the court held Wife in civil contempt for disobeying the court's order by removing items belonging to Husband and ordered that she be incarcerated until she returned the items belonging to Husband. The court allowed Wife 48 hours to return the items and purge herself of contempt. Because Wife returned some of Husband's belongings, she was not jailed. The court also set the final hearing for December 19, 2013.

In preparation for the final hearing, the parties agreed on scheduled times for depositions and mediation; however, neither Wife nor her counsel appeared for either. As a result, on December 5, 2013, Husband filed a Motion to Compel Mediation, to Compel Discovery and for Sanctions. The following day, Wife filed a Motion for Continuance of Trial, a Motion for Entry of Scheduling Order and For a Protective Order. Wife's motion alleged, *inter alia*, that her "delicate mental condition" and physical health impaired her ability to appropriately prepare and assist counsel in pursuing her case. Husband filed a motion to strike all medical records Wife attached in her motion, asserting that the documents were hearsay, not in the form of affidavits, and irrelevant because the medical records did not speak to whether Wife could participate in the proceedings.

---

[3] Specifically, the court found that Wife misled the court concerning her false statement that she paid all utilities prior to her removal from the home, as to the amount of cash she had on hand at the time of the Pendente Lite Support hearing, regarding the necessity of having more time to vacate the home because of her medical conditions, and with regard to her misappropriation of money left in the home by Husband.

The above motions were heard on December 18, 2013, during which counsel for Wife stated that Wife was going to have a complete neuro-psychological exam and that he understood that an affidavit from the attending physician would support his client's position with regard to her mental and physical problems. The court warned counsel that the affidavit needed to be specific as to what the problems were, needed to explain how those problems prevented Wife from adequately participating or from telling the truth, and needed to be from someone qualified to make that determination. The court granted Wife's motion to continue with strict guidelines as to mediation and discovery and set the final hearing date for March 31, 2014. The court also stated that no further continuances would be considered absent legally admissible medical documentation from a physician based upon some specific psychological or medical reason why Wife could not participate.

On March 31, 2014, the day of the scheduled final hearing, counsel for Wife, Martin Sir, made an oral motion to withdraw as attorney for Wife asserting a concurrent conflict of interest pursuant to Rule 1.7 of the Tennessee Supreme Court Rules of Professional Conduct. The trial court concluded that a conflict existed under Rule 1.7 and allowed Mr. Sir to withdraw. Based solely upon this withdrawal, the trial court granted another continuance and continued the matter until May 28, 2014, in order for Wife to obtain counsel. Following another continuance, the case was set for final hearing on July 30, 2014.

When the divorce action finally came on for hearing on July 30, 2014, Wife proceeded pro se. During Wife's presentment of the issues to be decided by the court, she alleged that the trial court's actions during various hearings in the case exhibited bias and prejudice by the court to such an extent that recusal was a necessity and made an oral request for the court to recuse itself.[4] In denying Wife's motion for recusal, the court stated:

> [T]he Court has made some findings in this matter. In every case, the fact that I made those findings was necessitated by [Wife's] actions or conduct in this case. When during the proceedings before the Court, the Court is forced to or makes decisions, procedural or otherwise, . . . that are adverse to a party, and in the course of making those decisions the Court arrives at conclusions about the veracity of a party, that does not furnish a basis for the Court, then, to recuse itself. I think it's called judicial prejudice and if a prejudice arises because of the actions of a party during the course of the proceedings, it's not required that the Court recuse itself. In fact, it would be . . . a dereliction of the responsibility of the Court to recuse itself when it has become intimately acquainted with the issues . . . [T]o recuse itself and

---

[4] Wife did not file a written motion for recusal.

transfer that matter to another Judge to give [Wife] a new opportunity to continue her practice of dishonesty or misrepresentation and . . . cause that Judge to have to revisit all of these matters, is absolutely an abdication of the responsibilities that a Judge has when he takes on a case. So, that motion is denied. . . . [Wife] is going to receive a fair hearing in this matter.

The trial court then ruled on Wife's oral motion for modifications and assistance, pursuant to the Americans with Disabilities Act ("ADA"). Wife asserted: "Today's accommodation, I need – I'm not able to represent myself," and "I need to continue the case to give me time to get my money together[.]" The trial court denied Wife's for the following reasons:

First, . . . there have been at least a couple of requests for accommodations that were timely filed and were filed in accordance with the rules of court, that were addressed at the time they were filed. My recollection of those accommodation requests were that they were essentially in the nature of a continuance and one of them was essentially granted because the matter was continued. The request being made today is being made in open court; there was, prior to this proceeding, no written requests made of the Court in accordance with the requirements of the rule. Secondly, . . . the requests have always been in the nature of trying to delay these proceedings. [The] Court has made it clear, repeatedly, that these proceedings need to move along. . . . It's been a tactic [Wife] has adopted from the get go to include changing attorneys, to bringing in extraneous issues . . . [Wife] has been found by this Court to be dishonest, to have misrepresented things, to outright lying to the Court about some things that are important to the Court's determinations. [Wife] has not responded to discovery, has not been cooperative in furnishing information that is necessary, both to [Husband's] review but also necessary for the Court to make an informed decision in this matter. And that's still occurring as we sit here today. Again, these issues about ADA compliance and her requests for recusal are delay tactics that the Court finds are an effort to defer, postpone these proceedings in, again, what is a straight forward case. So, [Wife's motion] for ADA Accommodations, i.e., a continuance, so that she can obtain counsel that she's had months of opportunity to obtain is denied.

Following the pretrial rulings, the court heard the testimony of Husband and Wife, among others. At the conclusion of the trial, the court announced its ruling from the bench and the Final Decree of Divorce was entered on August 20, 2014. The court granted Husband a divorce based on Wife's inappropriate marital conduct.

Concerning the parties' marital estate, the court specifically found Wife responsible for the dissipation of the marital assets. The court found, for example, that the

amount of attorney fees generated as of the time of the hearing was "obscene" and that the "sole reason that such fees were generated is the fact that [Wife] lied to the Court, failed to cooperate, delayed and procrastinated."[5] The court also found that Wife "completely flaunted" the court's direct order that she only remove her personal property from the marital home, noting that Wife "almost completely stripped the house of furniture, . . . Husband's personal property [including business, real estate, tax, insurance and other financial records], and fixtures in the home."

Concerning the parties' property, the court found that the property Wife purchased while the parties were seeking the 2008 divorce and subsequently brought into the marital home was marital property.[6] The court also found the marital home to be marital property because, *inter alia*, Husband added Wife's name to the deed for the home. In addition to these items, the parties' property included miscellaneous personal property, Husband's pension, and the family dog. The parties did not have any joint debt, but Husband and Wife had debts in their respective names. The property was awarded as follows. Wife was awarded all furniture and items of personal property in her possession. Husband was awarded all interest in his pension and the marital home, including all equity in the home. The court stated that this award would "make up, to some extent, for [Wife's] dissipation of marital assets." The court also approved the following property division set forth in the parties' partial mediation agreement: Wife retained a 2010 Nissan Murano, Husband retained a 2005 Nissan Altima, and each party was ordered to pay the debts in their names.

Concerning Wife's request for alimony, the court declined to award Wife alimony, finding that, although it spent several hours hearing this matter and in spite of its repeated efforts to make clear that the court was to decide the issue of alimony, Wife presented no evidence regarding her need for alimony or Husband's ability to pay. With regard to the parties' respective requests for attorney's fees, the trial court declined to award either party attorney's fees. The court also stated that if the court had awarded Wife a portion of Husband's pension, it would have awarded attorney's fees to Husband.

Wife appeals contending the trial court erred in the classification of property, the division of marital property, by declining to award alimony to Wife, and by awarding Husband attorney fees. Wife also contends the trial court erred by permitting her counsel of record to withdraw, denying her recusal motion, and denying her requests for disability modifications.

---

[5] At the time of the hearing, Husband had incurred $31,000 in attorney fees, and Wife had incurred approximately $20,000.

[6] The court found that the prenuptial agreement ceased to be effective because it pertained to property the parties had when they came into the marriage and that the evidence established they divided that property, went their separate ways, and then reconciled. Neither party challenges this finding.

Husband contends on appeal that he should be awarded attorney fees in this cause pursuant to Tenn. Code Ann. § 27-1-122 for Wife's filing of a frivolous appeal. In support of this contention, Husband asserts that in the "Argument" section of Wife's appellate brief, she either cites no authority to support her claims or cites authority which supports, conclusively, the argument of Husband.

## ANALYSIS

### I. BIAS OF THE TRIAL COURT

We begin our analysis with Wife's contention that we should reverse the trial court's decisions because the trial judge is biased against her.

"[O]ne of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001). Accordingly, at all times judges must conduct themselves "in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary . . . ." Tenn. R. Sup. Ct. 10, RJC 1.2. Judges are required to recuse themselves from any proceeding "in which [their] impartiality might reasonably be questioned . . . ." Tenn. R. Sup. Ct. 10, RJC 2.11(a). This is so even when no party has filed a motion for recusal. Tenn. R. Sup. Ct. 10, RJC 2.11 cmt. 2.

Tennessee Supreme Court Rule 10B requires a party seeking recusal or disqualification of a judge to "do so by a timely filed written motion" supported by an affidavit.[7] Tenn. Sup. Ct. R. 10B, § 1.01. Although the right to an unbiased judge is an essential part of our justice system, *see Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998), parties may lose the right to challenge a judge's impartiality when they fail to file a timely motion to recuse soon after they become aware of the facts giving rise to the motion. *Jerrolds v. Kelley*, No. W2003-00739-COA-R3-CV, 2004 WL 948743, at *4 (Tenn. Ct. App. Apr. 30, 2004). Parties will not be allowed "to gain procedural

---

[7] Tenn. Sup. Ct. R. 10B. Section 1. Motion Seeking Disqualification or Recusal of Trial Judge of Court of Record:

1.01. Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A party who is represented by counsel is not permitted to file a pro se motion under this Rule.

advantage by silently preserving a prejudicial event as an 'ace-in-the-hole' to be used in the event of an adverse decision." *Id.* (citing *Kinard*, 986 S.W.2d at 228). Consequently, the failure of a party to seek recusal of a judge in a timely manner results in waiver of the issue. *Eldridge v. Eldridge*, 137 S.W.3d 1, 8 (Tenn. Ct. App. 2002); *Kinard*, 986 S.W.2d at 228.

Wife contends the trial judge was biased against her; however, she never filed a written motion for recusal in the trial court as mandated by Tennessee Supreme Court Rule 10B. While conceding that she did not file a recusal motion in the trial court, Wife insists she should be allowed to raise the issue on appeal because she was acting pro se during much of the trial court proceedings.

We find Wife's pro se argument without merit because Wife was represented by attorneys during relevant portions of the trial court proceedings. More importantly, in her appellate brief Wife states that "some of the bias alleged by Wife in this matter is a result from events that occurred during the course of the litigation," and no action was taken on behalf of Wife to seek recusal of the trial court judge. Failing to comply with Rule 10B by filing a timely written motion in the trial court, Wife has waived her right to challenge the impartiality of the trial judge in this appeal. *See Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *5 (Tenn. Ct. App. Nov. 25, 2015); *Eldridge*, 137 S.W.3d at 8; *Kinard*, 986 S.W.2d at 228. Thus, we find no merit to this issue.

II. DIVISION OF MARITAL ESTATE

Wife contends the trial court erred by classifying personal property that she purchased during the marriage as marital property and by failing to equitably divide the marital property.

The division of marital property, including its classification and valuation are issues of fact. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Trial courts have "wide latitude in fashioning an equitable division of marital property." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). Accordingly, the trial court's decisions regarding classification, valuation, and division of property are reviewed de novo with a presumption of correctness unless the evidence preponderates otherwise. *Farrar v. Farrar*, 553 S.W.2d 741, 743 (Tenn. 1977).

As a preliminary matter, we note that Rule 7 of the Tennessee Rules of the Appellate Court requires that, in all cases in which a party takes issue with the classification and division of marital property, the party must include in its brief a chart specifying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property. Tenn. Ct. App. R. 7. Rule 7 also requires that "[e]ach entry in the table must include a citation to the record

where each party's evidence regarding the classification or valuation of the property or debt can be found. . . ." *Id.*

> This Court has previously held where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements. This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property. This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7.

> . . . .

> [I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

*Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011), *perm. app. denied* (Tenn. Apr. 12, 2012) (citations omitted) (quoting *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688 (Tenn. Ct. App. June 30, 2010)).

Wife's brief does not contain a table in compliance with Rule 7.[8] Additionally, Wife fails to cite any law offering guidance on the division of marital property as it occurred in this case, other than the distribution of marital property statute, Tenn. Code Ann. § 36-4-121. This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal.

---

[8] Perhaps, Wife did not include a table because she placed no evidence in the record on the value of certain assets she now says the trial court should have valued. *See Caldwell v. Caldwell*, No. M2007-01205-COA-R3-CV, 2008 WL 4613586, at *2 (Tenn. Ct. App. Oct. 13, 2008) ("It is the responsibility of the parties, not the court, to propose values to marital property."); *see also Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010) (holding that "[t]he fact that the trial court did not assign values to all of the property does not prohibit [the appellant] from providing this Court with the value [the appellant] contends ought to be assigned and a citation to the record to support such an assertion.").

*Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

For good cause, we may suspend the requirements or provisions of these rules in a given case. However, the Supreme Court has held that it will not find this Court in error for not considering a case on its merits when the plaintiff did not comply with the rules of this Court. *Bean*, 40 S.W.3d at 55-56 (citing *Crowe v. Birmingham & N.W. Ry. Co.*, 156 Tenn. 349, 1 S.W.2d 781 (1928)). In this case, Wife's failure to comply with the Rules of Appellate Procedure is so profound that she has waived all issues with regard to the division of marital property.

III. ALIMONY

Wife also contends that the trial court abused its discretion by declining to award Wife alimony.

Trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). Alimony decisions require a careful balancing of the factors in Tenn. Code Ann. § 36-5-121(i), and the two most important factors are the need of the disadvantaged spouse and the obligor's ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). Absent an abuse of discretion, a trial court's decision to award spousal support will not be disturbed on appeal. *Id.*

Appellate courts are disinclined to second-guess a trial court's decision regarding spousal support unless the decision is not supported by the evidence or is contrary to public policy. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree*, 16 S.W.3d at 360. "Because the trial judge is in the best position to assess the credibility of the witnesses, such credibility determinations are entitled to great weight on appeal." *Burden v. Burden*, 250 S.W.3d 899, 905 (Tenn. Ct. App. 2007).

In ruling from the bench, the court stated:

With respect to [Wife's] claim for alimony. Interestingly enough, although we've been here . . . six hours . . . , and despite my efforts to make it clear from the get go that I was here to decide issues of alimony, personal property, real estate, retirement, I have yet to hear one word from anyone that would enable the Court to make an award of alimony in this case. There has been absolutely no testimony or no proof with regard to [Husband's] ability to pay or [Wife's] need. None. [Wife] has established that she has a disability for Social Security purposes but there is absolutely no proof of the extent of that disability, any limitations that she may have with respect to that disability, any effect of that disability on her ability to earn a living or work. There's no competent medical proof before the Court that she has a disability at all. But the record is simply void of proof that would enable the Court to determine an award of alimony or entitlement to such an award. That burden was on [Wife] and she failed to meet it.

Although Wife contends that there was proof before the court that she was entitled to alimony and that Husband had the ability to pay, Wife failed to provide citations to the record as to where this "proof" exists. We acknowledge that Wife provides a citation to the record wherein the trial court found that Wife was in need of Pendente Lite Support; however, the trial court later set aside the order of support, finding that Wife, *inter alia*, perjured herself in regard to the amount of cash she had on hand.

Because the trial court is in the best position to assess the credibility of the witnesses, and because Wife has failed to cite to evidence that preponderates against the court's findings concerning alimony, we affirm the trial court's decision to not award alimony to Wife.

III. ATTORNEY'S FEES

Wife next contends that the trial court "erred in awarding Husband $31,000.00 in attorney's fees with offsets." We find no merit to this contention because there was no award of attorney fees in this case. The trial court specifically addressed this issue in its order stating: "With regard to the respective requests for attorney fees by the Parties, *the Court declines to award attorney fees to either party*." (Emphasis added).

We also note that Wife has waived this issue by failing to provide any citation to the record as to where this alleged erroneous action is recorded. Tenn. R. App. P. 27(a)(7)(A); *see* Tenn. Ct. App. R. 6(b) ("No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded."). Failing to

substantially comply with the Rules of Appellate Procedure and the rules of this Court constitutes a waiver of the issue. *See Bean*, 40 S.W.3d at 55.

### IV. MOTION TO WITHDRAW AS COUNSEL

Wife contends the trial court abused its discretion when it permitted her attorney, Martin Sir, to withdraw as her counsel of record based upon a concurrent conflict of interest pursuant to Rule 1.7 of the Tennessee Supreme Court's Rules of Professional Conduct.

Rule 1.7 of the Rules of Professional Conduct prohibits lawyers from representing a client if the representation involves a concurrent conflict of interest. *See* Tenn. Sup. Ct. R. 8, RPC 1.7(a). Such a conflict exists if, *inter alia*, "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2). However, Rule 1.7(b) permits a lawyer to represent a client notwithstanding the existence of a concurrent conflict of interest if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.7(b).[9]

The following circumstances led up to Mr. Sir's request to withdraw as counsel for Wife. Sometime prior to the second setting of the final hearing in this case, March 31, 2014, Husband accompanied Michelle White, a client of Mr. Sir, to request an order of protection against Ms. White's boyfriend. Husband testified that, while on their way, Wife followed them closely in her car and was driving at or above the speed limit, while also taking a video with her cellphone. Because Wife alleged adultery as one of her grounds for divorce, Husband expected Wife was attempting to prove indiscretion by Husband and subpoenaed Ms. White to testify regarding Wife's actions.[10]

---

[9] Rule 1.7(c) addresses the representation of multiple clients in the same criminal or juvenile delinquency proceeding, which is not applicable to this case. *See* Tenn. Sup. Ct. R. 8, RPC 1.7(c).

[10] In fact, during the final hearing, Wife did attempt to establish in her questioning of Husband that Ms. White was spending the night in the marital home, which Husband denied.

Mr. Sir determined that a concurrent conflict existed pursuant to Rule 1.7 and sought to withdraw as representation for Wife when faced with the possibility that he would have to vigorously cross-examine another client, Ms. White. Mr. Sir further acknowledged that he would likely have to withdraw from representing Ms. White as well. The trial court granted Mr. Sir's request, stating: "It is with a great deal of reluctance that I have concluded that [Mr. Sir's] Motion be granted. . . . [T]here is serious potential, if not an actual conflict in Mr. Sir's ability to simultaneously and competently and seriously advocate on behalf of both [Wife] and Ms. White."

Although Wife contends the trial court erred in permitting Mr. Sir to withdraw as her counsel of record, Wife fails to cite any law offering guidance as to why this issue must be reversed. Wife merely states that "[t]he simple remedy to this issue was for the Court to deny the Motion to Withdraw, which would have forced Mr. Sir to withdraw from representing Ms. White." Further, to the extent Wife contends that she was prejudiced by this ruling because she "was unable to hire new counsel," we first note that "a party has no absolute right to counsel in a civil trial." *Couillard v. Couillard*, No. E2001-01770-COA-R3-CV, 2002 WL 1446669, at *4 (Tenn. Ct. App. July 3, 2002) (citing *Knight v. Knight*, 11 S.W.3d 898, 900 (Tenn. Ct. App. 1999)). Second, the record contains nothing to support Wife's position that she was prejudiced by the trial court's decision to grant her attorney's motion to withdraw. Wife's counsel was allowed to withdraw on March 31, 2014, and the final hearing in the matter did not occur until July 30, 2014. Thus, Wife had four months to obtain new representation.

Considering the facts and the Rules of Professional Conduct governing an attorney's mandatory withdrawal, we find no reversible error in the trial court's decision to grant Mr. Sir's motion to withdraw.

### V. ALLEGED VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

As to this issue, Wife makes the following allegations in her brief:

The Trial Court erred in denying Wife's requests for Modifications. Wife submits that the Trial Court refused to acknowledge that Wife was disabled. Some of Wife's disabilities were unseen, i.e. mental disabilities. The Trial Court made comments regarding the legitimacy of said disabilities, but recognized that Wife receives Social Security Disability.

. . . .

The Trial Court ignored Wife's requests. The Trial Court denied Wife's fundamental right to equal access to justice.

Tennessee Rule of Appellate Procedure 27(a) states that the brief of the appellant shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented . . . including the reasons why the contentions require appellate relief, *with citations to the authorities and appropriate references to the record* (which may be quoted verbatim) relied on; . . ." (Emphasis added). Further, Court of Appeals Rule 6(b) provides that:

> No complaint for reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded.

Wife does not provide any citation to the record to support the allegations as stated her brief. Additionally, Wife failed to cite to a single authority that supports her argument and, by failing to comply with Tenn. R. App. P. 27(a)(7), she has waived this issue on appeal. Moreover, even if Wife had preserved this issue, we find no error in the trial court's denial of Wife's oral request for a modification – that being a continuance – because the request was untimely and not made in accordance with the Tennessee Judicial Branch Americans with Disabilities Act Policy. *See* Tenn. Sup. Ct. R. 45, app. A (stating that a request for modification should be made in writing and should be made no less than five business days prior to the date for which the modification is sought).

## VI. FRIVOLOUS APPEAL

Husband argues that Wife's appeal should be deemed frivolous. He contends that Wife caused unnecessary delay in this matter, has failed to adhere to the Tennessee Rules of Appellate Procedure, and has submitted an inadequate brief on appeal.

This court is statutorily authorized to award just damages against the appellant if we determine that the appeal is frivolous or that it was taken solely for delay. Tenn. Code Ann. § 27-1-122. The statute, however, is to be "interpreted and applied strictly so as not to discourage legitimate appeals." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2004) (quoting *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977) (discussing the predecessor of Tenn. Code Ann. § 27-1-122)). A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Wakefield*, 54 S.W.3d at 304. Occasionally, a party's failure to cite to any authority on appeal to support a reversal of a trial court's findings, especially when even cursory research would reveal the state of the law in this state, will render its appeal frivolous. *See GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 548 (Tenn. Ct. App. 2005).

Wife's substantial failures to comply with the Tennessee Rules of Appellate Procedure, the Rules of the Court of Appeals, and the lack of merit to the issues that were properly presented result in this appeal having no reasonable chance of success. Accordingly, we find the appeal frivolous and remand for the trial court to award Husband the reasonable and necessary fees and expenses he incurred on appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Kimberly Ann Roberts Bracey.

_____
FRANK G. CLEMENT, JR., JUDGE