# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 14, 2002

## CAROL L. SOLOMAN v. KLEBBER DUNKLIN MURREY

**Appeal from the Circuit Court for Davidson County**
**No. 99D-403      Donald P. Harris, Judge**

---

**No. M2001-00806-COA-R3-CV - Filed October 16, 2002**

---

Before their marriage, the parties signed a pre-nuptial agreement, which among other things, declared their intention to "equally divide any and all living expenses." When they divorced, the trial court enforced the agreement, and ordered the husband to reimburse the wife for her far greater contribution to such expenses during the course of the marriage. The husband argues on appeal that the living expenses provision should not have been enforced, because it is contrary to public policy. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Thomas Jay Norman, Nashville, Tennessee, for the appellant, Klebber Dunklin Murrey.

D. Scott Parsley, Nashville, Tennessee, for the appellee, Carol L. Soloman.

## OPINION

### I. AN ANTENUPTIAL AGREEMENT

Carol L. Soloman and Klebber Dunklin Murrey entered into an Antenuptial Agreement on March 22, 1991, and married in April. The agreement recites the parties' intentions to protect the interest that each had in separate property, for their own benefit and that of their children from prior marriages.

One clause provides that in the event of separation or divorce, all items of property (whether real, personal or mixed) titled in their separate names will be retained by the title-holder, and that any appreciation in the value of such property will likewise belong to the party having title. Another clause declares that property acquired during the marriage and titled in their joint names will be

divided equally. Still another declares that the individual provisions of the agreement are separable, and that if any provision should be held to be invalid, unenforceable or void, the remaining provisions will not be affected.

An attachment to the agreement, executed on the same day, contains additional provisions. One provides that the parties will reside at the homeplace of the wife, located at 521 Skyview Drive in Nashville. However, if that property is sold, and the funds invested in a new homeplace, the agreement states that the new property will be jointly owned, in proportion to the contribution each party makes to it. A further provision reads as follows:

## LIVING EXPENSES

The parties agree to equally divide any and all living expenses, including but not limited to all utilities and repairs.

While the parties are residing together at 521 Skyview Drive, Nashville, Tennessee the wife shall pay the mortgage payments on said homeplace.

## II. Divorce and Enforcement

The parties did not stay at Skyview Drive, but built a new home on Lickton Pike. After about eight years of marriage, they separated, and Ms. Soloman sued for divorce. On September 1, 1999, the trial court granted the parties a divorce on stipulated grounds. *See* Tenn. Code. Ann. § 36-4-129. The court reserved the issues regarding the division of marital property for a later date.

During the later hearing, the court heard detailed testimony as to the property of the parties, and their personal finances. The couple had jointly acquired four pieces of real property during their marriage: the marital home on Lickton Pike, a beach house in Florida, an office building in Gallatin, and a lot on St. George Island, Florida. The marital home was titled in Ms. Soloman's name alone. The other properties were titled in both their names.

Ms. Soloman produced detailed financial records, and testified that her husband made almost no contribution to the acquisition of any of these properties, or to the parties' living expenses, while she paid for virtually all the food, the utility bills, extensive repair bills, a housekeeper, insurance premiums and vehicle expenses, as well as for Mr. Murrey's boat and airplane, which he later sold, pocketing the proceeds. Mr. Murrey disputed his wife's testimony, and claimed that he made a substantial contribution of labor to the improvement of the marital property, and regular contributions to the living expenses.

In its order of March 5, 2001, the trial court stated that it interpreted the jointly acquired property provision of the antenuptial agreement to apply without regard to the respective contributions of the parties. The court accordingly made an equal division of the $187,000 equity in the beach house, office building and island lot. The agreement provided, however, that the marital home was to be divided according to the contribution of the parties. On the basis of the evidence,

the court found that 75% of the $39,000 equity in the Lickton Pike home should go to the wife, and 25% to the husband.

The court also found that Ms. Soloman had paid $130,313.76 in documented living expenses and home repairs during the course of the marriage, while Mr. Murrey had paid $5,042. The court noted that both parties "owned separate real properties at the time of their marriage and acquired others subsequent thereto," and reasoned that failure to enforce the living expenses agreement would result in inequity. The court observed that the party that did not pay his share would be able to use the money to invest in separate property, and thus take unfair advantage of the provision of the agreement that allows each party to retain the property held in his own name. The court accordingly ordered the husband to reimburse the wife $62,635 from his share of the marital estate, representing half of the difference between her contribution to the living expenses and his. This appeal followed.

### III. THE ANTENUPTIAL STATUTE

The sole issue on appeal is whether the living expenses provision in the antenuptial agreement may be enforced. The appellant argues that it should be held void and unenforceable, in part because Tenn. Code. Ann. § 36-3-501, which provides for the enforcement of antenuptial agreements in Tennessee, refers specifically only to the separate property of the parties prior to marriage. That statute reads in pertinent part,

> . . . any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage which is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms. [1980 Pub. Acts, ch. 492, § 1].

Mr. Murrey implies that by enforcing the disputed provision, we thereby transform living expenses into an element of marital property, and introduce a chaotic new element into domestic relations law. He asks rhetorically,

> ". . . is the payment of living expenses now a factor to be considered by the trial courts of this state in determining a division of marital property? Does every divorce in this state hereafter contain an inquiry into the total expenditures of each spouse throughout the course of the marriage? Do marriages hereafter contain an element of accounting for each penny spent by each spouse during the marriage in preparation for a possible future divorce?"

With all due respect to the appellant, we do not believe that the enforcement of the clause at issue would change living expenses into a species of marital property subject to division, in the absence of a prenuptial agreement so providing.

We also find it instructive that even though alimony is not mentioned in Tenn. Code. Ann. § 36-3-501, our Supreme Court has declared agreements waiving or limiting alimony to be enforceable, "so long as the antenuptial agreement was entered into freely and knowledgeably, with adequate disclosure, and without undue influence or overreaching . . . ." *Cary v. Cary*, 937 S.W.2d 777, 782 (Tenn. 1996).[1]  It thus appears to us that the subject matter of prenuptial agreements is not limited to the disposition of property owned by the parties before their marriage, and that the inclusion of questions of support into such agreements does not lead to a change in the statutory definitions of marital and separate property.  *See* Tenn. Code. Ann. § 36-4-121(b)(1).

## IV.  PUBLIC POLICY CONSIDERATIONS

The appellant contends that enforcement of the living expenses provision would be in violation of the clearly enunciated public policy interest in protecting the institution of marriage. *See Thomasson v. Thomasson*, 755 S.W.2d 779 (Tenn. 1988); *Farrar v. Farrar*, 553 S.W.2d 741, 744 (Tenn. 1977).  He argues that to hold each party accountable to the other for expenditures made during the course for the marriage would be destructive to the institution.  We do not agree.

Perhaps his argument would be valid if reimbursement for living expenses became a general rule to be followed whenever property was divided following divorce, for we can easily imagine situations where such a rule could lead to absurd results or work severe hardships on the parties.  But Ms. Soloman is not asking for a radical change in the law of domestic relations.  She is merely asking the court to enforce the terms of an agreement to which both parties freely assented.

The State of Tennessee now recognizes the validity of antenuptial agreements, and allows them to be interpreted and enforced like any other contracts. *Minor v. Minor*, 863 S.W.2d 51 (Tenn. Ct. App. 1993); *Kahn v. Kahn*, 756 S.W.2d 685 (Tenn. 1988).  Because of the confidential nature of the marriage relationship, however, the courts must closely examine the circumstances of their formation, to make sure they have been entered into freely, knowledgeably and in good faith, without duress or undue influence. *Randolph v. Randolph*, 937 S.W.2d 815 (Tenn. 1996); *Wilson v. Moore*, 929 S.W.2d 367 (Tenn. Ct. App. 1996).

In the present case, there is no suggestion of compulsion, deception or overreaching in the formation of the agreement, and no evidence of disparity in the bargaining power of the parties.  Instead, we have two mature and knowledgeable adults, each with his own career and property, who wished to equalize the financial burdens and rewards incident to their marriage.  They freely entered

---

[1] The *Cary v. Cary* decision does add one more requirement for the enforcement of alimony provisions in a prenuptial agreement:  that it not deprive one spouse of support that he or she cannot otherwise obtain, resulting in that spouse becoming a public charge.

into an agreement for that purpose, and both acknowledge the validity of that agreement, except one wishes us to invalidate a provision that would be to his disadvantage.  We see no reason to do so.

**V.**

The order of the trial court is affirmed.  Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant, Klebber Dunklin Murrey.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.