IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2023 Session

**EDWARD JONES TRUST COMPANY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF CHARLES S. WOODS, JR. v.
KATHY MARIE WOODS**

**Appeal from the Chancery Court for Wilson County**
**No. 2021-CV-59        Charles K. Smith, Chancellor**

_____

**No. M2023-00172-COA-R3-CV**
_____

A widow received pension benefits that were payable only to her as a surviving spouse.  A trust company representing the decedent's estate filed suit against the widow arguing that she breached the antenuptial agreement between her and the decedent that required her to disclaim any right she had in the decedent's separate property.  The trial court granted summary judgment to the widow after concluding that the antenuptial agreement contained an exception that allowed the widow to retain pension benefits that were payable only to her as surviving spouse.  The trust company appealed.  Because the antenuptial agreement is ambiguous, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed
and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Jonathan Cole and Charles Covington McLaurin, Nashville, Tennessee, and Sonya S. Wright, Murfreesboro, Tennessee, for the appellant, Edward Jones Trust Company.

Ellis Hayes Marshall, III, Mt. Juliet, Tennessee, and Matthew J. Rossiter, St. Louis, Missouri, for the appellee, Kathy Marie Woods.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Charles S. Woods, Jr. ("Decedent") and Kathy Marie Woods grew up together in West Virginia, but their paths diverged during early adulthood.  Decedent went on to marry

Donita Locke, and he had two children with her. After divorcing Ms. Locke in 1995, Decedent reconnected with Ms. Woods, and they eventually began dating in 2001. Decedent and Ms. Woods dated for many years and, in 2017, they decided to marry.

In preparation for their marriage, Decedent and Ms. Woods executed an antenuptial agreement ("the Agreement") on February 14, 2017. Under Section 5 of the Agreement, each party disclaimed all marital rights and rights of descent and distribution as to the "presently owned or hereinafter acquired" separate property of the other. Attached to the Agreement as Exhibit A was a list of assets Decedent claimed as his separate property. As relevant here, Decedent claimed the Edward Jones Profit Sharing and 401(k) plan ("the Plan") in which he participated and held an interest during his more than twenty years of employment as an investment broker with Edward D. Jones & Co. ("Edward Jones"). Notably, the Plan's terms dictated that, upon the participant's death, the Plan's proceeds would go to the participant's surviving spouse, unless the surviving spouse had agreed to the designation of a different beneficiary by signing the Spousal Consent section of a document referred to as the Beneficiary Designation Form.

Two weeks after signing the Agreement, Decedent executed a will and living trust agreement. In the will, Decedent bequeathed all of his property to the living trust, and Article 4.3(A) of the living trust agreement provided, in pertinent part, that, upon Decedent's death, the trustee was to distribute the trust's remaining principal and earnings as follows:

> In the event [Decedent] and KATHY MARIE POST ("KAW") have been married for a period of at least two (2) years at the time of [Decedent's] death, the Trustee shall make the distributions set out below. . . .
> (1.) the sum of One Hundred Thousand ($100,000.00) Dollars from life insurance on the life of [Decedent] shall be distributed to KATHY, free of any trust. It is [Decedent's] intent that should Kathy receive any death benefit from life insurance on [Decedent] outside the trust the amount of such benefit received shall reduce the amount to be distributed under this Paragraph 4.3(A)(1);
> (2.) the sum of Seven Hundred Thousand ($700,000.00) Dollars shall be distributed to the KATHY MARIE POST TRUST ("Kathy Trust") to be established for the benefit of Kathy, to be held and administered as follows:
> a.) The Trustee shall hold the principal of the Kathy Trust and invest the same as the Trustee deems most proper.
> b.) During the lifetime of Kathy, the Trustee may pay to, or apply for the benefit of Kathy, on a monthly basis, an annual amount equal to six percent (6%) of the value of the trust estate as established on January 1 of each year, to be paid first from the income of the Kathy

Trust, and then from the principal of the Kathy Trust. Any income that is not paid to or distributed for Kathy shall be added to the principal of the Kathy Trust at the end of the year.

c.) Upon Kathy's death, the Trustee shall divide the remaining balance of the principal of the Kathy Trust and any undistributed earnings to the CHARLES S. WOODS, JR. FAMILY TRUST, to be administered as set forth in Paragraph 4.3(D).

The same day that Decedent executed the will and living trust agreement, he also executed a Beneficiary Designation Form for the Plan. In the Beneficiary Designation Form, Decedent identified the living trust as the Plan's beneficiary. The form included two boxes for marital status: "Married" and "Not Married." Decedent checked the "Not Married" box, and next to that box appeared the following statement: "If you later marry, your new spouse will automatically become the sole primary beneficiary, unless you complete a new Beneficiary Designation Form." Beside the "Married" box that Decedent did not check, the following statement appeared: "If you are married, your spouse must complete the 'Spousal Consent' section if you name anyone other than your spouse as the primary beneficiary."

After Ms. Woods and Decedent married on April 5, 2017, Decedent never completed a new Beneficiary Designation Form, and he never presented the previously completed form to Ms. Woods for her to sign the "Spousal Consent" section. Thus, when Decedent died three years after marrying Ms. Woods, Edward Jones transferred the Plan's benefits to her as required by the Plan's terms and the Employee Retirement Income Security Act of 1974 ("ERISA")[1] because she was his surviving spouse. When Ms. Woods kept the Plan's benefits rather than disclaiming them pursuant to the Agreement, the Edward Jones Trust Company ("the Trust Company"), as the representative of Decedent's estate, filed suit against her on March 10, 2021, asserting a claim for breach of contract.

On May 27, 2021, Ms. Woods filed a motion to dismiss the complaint but, following a hearing on the motion, the trial court converted the motion to a motion for summary judgment and allowed the parties time to engage in discovery. On October 25, 2021, the parties filed cross-motions for summary judgment. The Trust Company argued that it was entitled to summary judgment because the plain language of the Agreement required Ms. Woods to disclaim any surviving spouse rights she had in Decedent's separate property, which Decedent expressly identified as including the Plan. Ms. Woods, on the other hand, asserted that, because Decedent never presented her with the Beneficiary Designation Form for her to sign the Spousal Consent section, the Plan's benefits were only payable to her

---

[1] ERISA, a federal law, "sets minimum standards for most voluntarily established retirement and health plans in private industry to provide protection for individuals in these plans." *ERISA*, U.S. Department of Labor, https://dol.gov/general/topic/healthplans/erisa#.~:text=The%20Income%20Security,for%20individuals%20in%20these%20plans (last visited Apr. 18, 2024).

upon Decedent's death. Thus, she asserted, she was entitled to summary judgment because the plain language of the Agreement allowed her to keep any of Decedent's "pension benefits or similar benefits" that were "payable only to a surviving spouse."

After hearing arguments on the motions, the trial court entered an order granting Ms. Woods's motion for summary judgment and denying the Trust Company's motion for summary judgment, based upon its finding that the Agreement provided an exception to the disclaimer of separate property in circumstances where a decedent spouse's "pension benefits or similar benefits" were "payable only to a surviving spouse." Because no subsequent Beneficiary Designation Form was executed, the Plan's benefits were only payable to Ms. Woods at the time of Decedent's death. The court found that the exception applied and allowed Ms. Woods to retain the funds.

The Trust Company appealed and presents two issues for our review, which we consolidate and restate as follows: whether the trial court erred in granting summary judgment to Ms. Woods.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P.

- 4 -

56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show that he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*, 271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

Because any party may move for summary judgment under Tenn. R. Civ. P. 56, cases sometimes involve cross-motions for summary judgment. *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010). As the Tennessee Supreme Court explained in *CAO Holdings v. Trost*:

> Cross-motions for summary judgment are no more than claims by each side that it alone is entitled to a summary judgment. The court must rule on each party's motion on an individual and separate basis. With regard to each motion, the court must determine (1) whether genuine disputes of material fact with regard to that motion exist and (2) whether the party seeking the summary judgment has satisfied Tenn. R. Civ. P. 56's standards for a judgment as a matter of law. Therefore, in practice, a cross-motion for summary judgment operates exactly like a single summary judgment motion.

*Id.* at 83 (citations omitted).

ANALYSIS

I. The Plan's Benefits

At the center of the parties' dispute is an antenuptial agreement, which is a contract that may be interpreted like any other contract. *Soloman v. Murrey*, 103 S.W.3d 431, 434 (Tenn. Ct. App. 2002); *see also In re Estate of Darken*, No. M2016-00711-COA-R3-CV, 2016 WL 7378806, at *11 n.8 (Tenn. Ct. App. Dec. 20, 2016). The interpretation of a contract is a question of law that we review de novo with no presumption of correctness. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). When interpreting a contract, a court's task "'is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy.'" *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002) (quoting *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn. 1973) (quoting 17 AM. JUR. 2d, *Contracts*, § 245)). Courts ascertain the parties' intent by considering "'the usual, natural, and ordinary meaning of the contractual language.'" *Id.* at 889-90 (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). If the contractual language is clear and unambiguous, "the literal meaning of the language controls," and the

determination of the parties' intent "is generally treated as a question of law because the words of the contract are definite and undisputed," leaving no genuine factual issue for a court or jury to decide. *Id.* at 890 (citing 5 Joseph M. Perillo, CORBIN ON CONTRACTS, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).

Where a contractual provision "is susceptible of more than one reasonable interpretation," however, the contract's terms are ambiguous. *Memphis Housing Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001). "In other words, '"[a]mbiguity" in a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one.'" *Stonebridge Life Ins. Co. v. Horne*, No. W2012-00515-COA-R3-CV, 2012 WL 5870386, at \*4 (Tenn. Ct. App. Nov. 21, 2012) (quoting *NSA DBA Benefit Plan, Inc. v. Conn. Gen. Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997)). If a contract's terms are ambiguous, "the intention of the parties cannot be determined by a literal interpretation of the language, and the courts must resort to other rules of construction." *Planters Gin Co.*, 78 S.W.3d at 890. As the Tennessee Supreme Court has explained:

> "When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. An ambiguous provision in a contract generally will be construed against the party drafting it. Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract."

*CHS Dev. Corp., Inc. v. Lakeview Neurorehab Ctr. Midwest, Inc.*, No. E2018-00519-COA-R3-CV, 2018 WL 6707920, at \*5 (Tenn. Ct. App. Dec. 19, 2018) (quoting *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006) (internal citations omitted)). "If the contract is ambiguous even after this Court applies the pertinent rules of construction, then the interpretation of the contract 'become[s] a question of fact such that summary judgment is not proper.'" *Stonebridge Life Ins. Co.*, 2012 WL 5870386, at \*4 (quoting *Planters Gin Co.*, 78 S.W.3d at 890); *see also Dick Broad. Co.*, 395 S.W.3d at 659.

The Trust Company contends that the trial court erred in granting Ms. Woods's motion for summary judgment because the Agreement contains conflicting terms that create an ambiguity as to whether Ms. Woods was required to disclaim the Plan's benefits. Ms. Woods asserts that the Agreement's terms are not unambiguous and do not conflict, allowing her to retain Decedent's pension benefits that can only be paid to her as his surviving spouse. After thoroughly reviewing the Agreement, we agree with the Trust Company for the reasons discussed below.

The fourth paragraph of the Agreement states that "each party desires to retain absolute and full control of his or her own separate property, including appreciation." The Agreement then defines the term "Separate Property" as:

(i)     Property owned by a spouse before marriage;
(ii)    Property acquired in exchange for Property acquired before the marriage;
(iii)   Income from or appreciation of Property owned by a spouse before marriage (regardless of the contribution to the preservation and appreciation by the other party);
(iv)    Property acquired by a spouse in his or her own name after marriage; or
(v)     Property acquired by a spouse at any time by gift, devise, bequest, or descent.

Consistent with the parties' stated desire to retain control of his or her "Separate Property," Section 2 provides, in pertinent part, as follows:

RIGHT TO RETAIN PRESENTLY OWNED OR HEREINAFTER ACQUIRED SEPARATE PROPERTY.
A. Except as hereinafter provided, each of the parties shall have the sole ownership and control of his or her Separate Property, whether presently owned or hereinafter acquired, as his or her absolute property without interference from the other party, as if the marriage had not taken place, unless the parties expressly agree otherwise in a writing signed by both parties setting forth as its purpose such joint ownership.

And, the first sentence of Section 5, states that, "[e]xcept as hereinafter set forth, each party hereby disclaims as to the Separate Property of the other all marital rights and rights of descent and distribution . . . ." In an attachment referred to as "Exhibit A," Decedent identified the Plan as his separate property that he acquired prior to the marriage.

The foregoing contract language suggests that Decedent's "Separate Property" included the Plan's benefits, and it suggests that Ms. Woods disclaimed any right she may have had in Decedent's "Separate Property," including any right she would have to receive the Plan's benefits as a surviving spouse. But, the last sentence of Section 5, expressly addresses "pension benefits or other similar benefits" and provides: "each party does hereby waive any rights as a surviving spouse to the pension benefits or other similar benefits of the other party, *except to the extent that such benefits may be payable only to a surviving spouse*." (Emphasis added). The Plan's benefits are "pension benefits or other similar benefits," and there is no dispute that they were payable only to Ms. Woods upon Decedent's death. Thus, Section 5 appears to contemplate an exception to the disclaimer requirement, allowing Ms. Woods to keep the Plan's benefits as a surviving spouse.

It is unclear from the contract's language, however, whether Decedent intended the exception in Section 5 to apply to all pension benefits or similar benefits, including those defined as his Separate Property in Exhibit A, or whether he intended the exception to apply only to any pension benefits or similar benefits that were not explicitly defined as his Separate Property. Furthermore, it is unclear from the contract's language whether Decedent intended the "payable only to a surviving spouse" phrase to mean those benefits that could not be paid out, under any circumstance, to anyone other than a decedent's surviving spouse, such as fixed annuities limiting payment to a decedent's surviving spouse or social security benefits payable exclusively to a decedent's surviving spouse. Lastly, it is unclear, at what point in time, Decedent intended for "payable only to a surviving spouse" to be measured. For instance, did he intend for "payable only to a surviving spouse" to be measured as of the time the Agreement was executed or as of the time of his death? We, therefore, conclude that Section 5 establishes an ambiguity.[2]

---

[2] Ms. Woods contends that the Trust Company waived its argument that the Agreement was ambiguous because it was not raised in the trial court. She is correct that the term "ambiguous" appears neither in the Trust Company's pleadings nor in the transcript of the hearing on the motions for summary judgment. However, our Supreme Court has explained as follows:

> Determining whether parties have waived their right to raise an issue on appeal should not exalt form over substance. Appellate courts must carefully review the record to determine whether a party is actually raising an issue for the first time on appeal. *Fayne v. Vincent*, 301 S.W.3d [162, ] 171 n.6 [(Tenn. 2009)]. The fact that the party phrased the question or issue in the trial court in a different way than it does on appeal does not amount to a waiver of the issue. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 n.1 (Tenn. 2001) (noting that "the failure to use the right label does not result in a waiver").

*Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010). The Court has further explained:

> Appellate review preservation requirements ensure that the [parties] are afforded an opportunity to develop fully their opposing positions on an issue, and such requirements also enable a trial court to avoid or rectify an error before a judgment becomes final. *Puckett [v. U.S.]*, 566 U.S. [129, ] 134, 129 S.Ct. 1423 [(2009)]; *[State v.] Bishop*, 431 S.W.3d [22, 43 (Tenn. 2014); *[State v.] Jordan*, 325 S.W.3d [1,]57-58 [(Tenn. 2010)]. As a result, appellate review preservation requirements serve to promote fairness, justice, and judicial economy by fostering the expeditious avoidance or correction of errors before their full impact is realized, and in this way, may obviate altogether the need for appellate review. *Jordan*, 325 S.W.3d at 57-58; *see also United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (recognizing that appellate review preservation requirements "encourage all trial participants to seek a fair and accurate trial the first time around[.]" (citation and internal quotation marks omitted)).

*State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018).

A review of the record in this case shows that, at the hearing on the motions for summary judgment, the following exchange occurred between the Trust Company's attorney and the trial judge:

The record contains parol evidence regarding Decedent's intent, but consideration of the parol evidence does not resolve the ambiguity in the Agreement. In particular, the record includes Decedent's will, the living trust agreement, and the Beneficiary Designation Form that Decedent executed two weeks after executing the Agreement. These documents suggest that Decedent did not intend for the Plan's benefits to pass outright to Ms. Woods, but rather, to pass through the trust and ultimately to Decedent's children. Yet, Decedent's failure to execute a new Beneficiary Designation Form, coupled with his failure to insist that Ms. Woods execute the Spousal Consent section of the form, suggests that Decedent may have changed his mind and intended to gift the Plan's benefits to Ms. Woods. We conclude that a genuine issue of material facts exists regarding the parties' intent and, therefore, summary judgment is not appropriate in this case. We reverse the trial court's grant of summary judgment to Ms. Woods and remand the case to the trial court for an evidentiary hearing to develop facts to aid the court in applying established rules of construction with consideration of parol evidence as necessary to determine the parties' intent.

II.     Attorney Fees

We now turn to Ms. Woods's request for an award of her reasonable appellate attorney fees and court costs pursuant to the Agreement. Regarding attorney fees, the Agreement provides:

18. <u>ENFORCEMENT</u>.

---

THE COURT: Well, any interest he had in the 401(k) would have been separate, I think is pretty clear. She was disclaiming interest on the 2/13, 2/14 of '17. That's when she was disclaiming any interest.

MS. SMITH WRIGHT: Correct. To any of the separate property. And the separate property as listed on Exhibit A, includes the 401(k) and the money, the profit sharing.

THE COURT: So they should have not even put in likewise, that part.

MS. SMITH WRIGHT: Well, Your Honor, I think probably, and I'm guessing what the attorney was doing, so maybe I shouldn't do that, but I guess maybe he thought, well, what if this guy ends up and retires and goes and gets a job at Pizza Hut and has some sort of pension that's not listed as separate property and leaves his wife? Then fine, she would get it. But it's not separate property. Because the separate property is listed, which is the 401(k) plan and the profit sharing. If there is some other benefit that he gets down the road or something that maybe he even had but didn't list on his Exhibit A, if there was something else that he had a pension plan for or other similar benefit and it wasn't on Exhibit A, I wouldn't be arguing, Your Honor.

Although "ambiguous" was not mentioned in the foregoing, the argument advanced by the Trust Company's attorney bears a striking resemblance to the ambiguity argument asserted before this Court. Thus, we do not consider the issue waived.

> In the event it becomes reasonably necessary for either party to institute or defend legal proceedings to enforce any provision of this Agreement, he or she, *if the prevailing party*, shall also be entitled to a judgment for reasonable expenses, including, but not limited to, attorney fees, litigation expenses, depositions, travel, expert fees, and court costs.

(Emphasis added). Because Ms. Woods is not the prevailing party on appeal, we determine that an award of appellate attorney fees and court costs to Ms. Woods is not warranted.

CONCLUSION

The judgment of the trial court granting summary judgment to Ms. Woods is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Kathy Marie Woods, for which execution may issue if necessary.


/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE